Maria T. PARDO, Appellant,

v.

WILSON LINE OF WASHINGTON, INC., et al., Appellees.

No. 22279.

United States Court of Appeals
District of Columbia Circuit.

Argued March 20, 1969.

Decided May 23, 1969.

2. 28 U.S.C. § 2255 (1964).

Mr. Henry H. Brylawski, Washington, D. C., for appellant.

Mr. Ernest F. Henry, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

This appeal challenges the District Court's refusal to give full faith and credit to a New York judgment. The District Judge found no jurisdiction in the New York courts over appellees. For the reasons stated below, we affirm.

## I

On July 4, 1961, appellant was injured by the negligent acts of the crew of the SS HUDSON BELLE while she was aboard that excursion boat during a cruise on the Hudson River in New York. She brought suit in the New York courts against the corporation which ran the chartered cruise, Wilson Line of New York, obtaining a default judgment for $15,000 on February 7, 1963.

When appellant attempted to enforce the judgment, she discovered that Wilson Line of New York had gone out of business, and that the HUDSON BELLE was now in Washington, D. C., plying the Potomac under the name GEORGE WASHINGTON. The ship's new owner was a company called Wilson Line of Washington, the president of the Washington Line being Joseph Goldstein, former president of the defunct Wilson Line of New York. Appellant then moved in the New York court to amend her original complaint to add as new defendants Wilson Line of Washington and Joseph Goldstein.[1]

Appellant's amended complaint stated that Wilson Line of Washington was a corporation which "did transact business in the State of New York," and that the transfer of the HUDSON BELLE to the Washington corporation was a fraudulent transfer of the assets of Wilson Line of New York, the transfer being carried out by Goldstein with the purpose of defrauding creditors. Wilson Line of Washington, which had its offices in Washington, D. C., and Goldstein, who lived in Maryland, were served pursuant to New York's Long-Arm Statute.[2] Neither Goldstein nor Wilson Line of Washington made any answer to appellant's motion to have them added as de-

fendants, and on January 14, 1965, a judgment was entered against them by default for the $15,000.

Appellant then brought suit in the District Court here to enforce her New York judgment against Goldstein and Wilson Line of Washington. Appellant's case consisted of putting into evidence the New York judgment. The District Judge ruled that the New York judgment raised a *prima facie* case of valid jurisdiction and that the burden shifted to appellees to demonstrate that there was no jurisdiction.

Appellees introduced several documents relating to the transfer of the ship, and Goldstein testified regarding the activities of the various corporations and the transfer of the ship. After hearing the evidence the judge held that Wilson Line of Washington had never conducted any business in New York, and that the transfer of the ship was a *bona fide* arm's length transaction, involving third parties as well as the various Wilson corporations, and thus was not fraudulent. Since appellant's apparent bases of jurisdiction, as indicated by her amended complaint and by her counsel's approach in the District Court, were rebutted by appellees, the judge ruled that there had been no valid jurisdiction over appellees. Accordingly, he denied enforcement of the New York judgment.

## II

There are, of course, two constitutional principles at stake here. First is the obligation to give full faith and credit to a judgment rendered by a court in another jurisdiction. Second is the principle that due process is violated when a state renders a judgment against a per-

---

1. Appellant also added as defendants three other "Wilson" corporations: Wilson Steamship Corporation, Wilson Line Operating Company, and Wilson Line, Inc. A great portion of this litigation has been occupied in an attempt to sort out the confusing intertwining of the various Wilson corporations (perhaps made more so by the fact that there seems

to be no Mr. Wilson). We will confine ourselves to stating only the minimum conclusions as to those relationships which are required to decide the legal issues; any attempt to detail in full these connections would surely founder.

2. New York CPLR § 302(a) (1968–69 Pocket Part).

son over whom it does not have jurisdiction.

■ The Supreme Court has elucidated and balanced these principles in a long line of decisions, from Pennoyer v. Neff, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878), to Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is clear that a judgment may be collaterally attacked on the ground that there was no jurisdiction[3]; however, "[t]he burden of undermining the verity" of such a judgment "rests heavily upon the assailant." Williams v. North Carolina, 325 U.S. 226, 233–234, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577 (1945). Thus a judgment makes out a *prima facie* case of jurisdiction: "If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record it-

self." Adam v. Saenger, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938); Cook v. Cook, 342 U.S. 126, 128, 72 S.Ct. 157, 96 L.Ed. 146 (1951).

■ The apparent theory of jurisdiction upon which appellant proceeded was that Wilson Line of Washington and Goldstein came within Section 302(a) of New York's Long-Arm Statute, which reads: "[A] court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent: 1. transacts any business within the state * * *." Wilson Line of Washington was simply alleged to have transacted business in New York, and Goldstein was alleged to have participated in the fraudulent transfer which, presumably, would have been a transaction which would bring him within the statute.[4]

■ The District Judge required appellees to rebut these allegations; after

---

3. However, where the party has contested the jurisdiction of the court in the original forum he may be estopped from again raising the matter in another forum. Williams v. North Carolina, 325 U.S. 226, 230, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 30, 37 S.Ct. 492, 61 L.Ed. 966 (1917).

4. In view of our holding, *infra*, that there was no fraudulent transfer, we need not decide whether that would have conferred jurisdiction under the New York statute. Long-arm statutes which speak of "transacting business" within the state are usually aimed at reaching the full constitutional limits of a state's extension of jurisdiction. There have been three ways of using such a statute to bring a person or corporation validly within the state's jurisdiction: (1) jurisdiction has been found when there has been an isolated act or two within the state when the act has given rise to the subject matter of the dispute, McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957); (2) jurisdiction has been found when an out-of-state corporation does some act (such as manufacture an item) which causes consequences within the state (such as eventually being sold in the state and exploding), Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); and (3) jurisdiction has been

found when the out-of-state corporation has conducted a course of business within the state, even though that business was unrelated to the cause of action, Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). However, jurisdiction cannot constitutionally attach when there has only been an isolated act within the state unrelated to the cause of action: "[I]t has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S. Ct. 154, 159, 90 L.Ed. 95 (1945).

New York appears to follow this general analysis in determining jurisdiction. *See, e. g.,* Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917); Peters v. Robin Airlines, 281 App.Div. 903, 120 N.Y.S.2d 1 (1953); Greenberg v. Lamson Bros. Co., 273 App.Div. 57, 75 N.Y.S.2d 233 (1947). For a general discussion, *see* Developments in the Law, State-Court Jurisdiction, 73 Harv.L.Rev. 909 (1960). For a thorough treatment of long-arm jurisdiction in the federal courts, and the relationship of such jurisdiction to the problem of federalism, *see* Foster, Long-Arm Jurisdiction in Federal Courts, 1969 Wis.L.Rev. 9.

a full hearing he found that they had done so. The evidence before him on these points was substantial and we certainly cannot say that his findings were "clearly erroneous." Rule 52(a), Fed. R.Civ.P. We therefore affirm his ruling that insofar as jurisdiction was predicated on the alleged fraudulent transfer, or on Washington Line's doing business in New York, no valid jurisdiction was obtained and the New York judgment was not entitled to be enforced.

### III

On appeal, appellant urges a new basis for upholding the jurisdiction of the New York court. Appellant argues here that the corporate "veil" of Wilson Line of New York should be "pierced" to reach Goldstein. The argument is that that corporation was simply a dummy, and that under New York law the corporation would be pierced (as would its parent corporation, Wilson Steamship Corporation) and Goldstein would be found to be the real party at interest. Thus, the argument concludes, it was really Goldstein who was "transacting business" in New York, not Wilson Line of New York.

 We need not decide the question whether service of process on a corporation doing business within New York would be considered service on the individual controlling party if the corporate entity is disregarded.[5] Nor need we decide whether, under New York law, the stringent requirements for piercing a corporate entity are met here.[6]

 Piercing a corporate veil is a task which a court undertakes reluctantly; there is a presumption of cor-

[5]. There are two cases in which New York courts held that service of process on a corporation within the state would be considered service of process on an out-of-state corporation where the two were so closely related that one really controlled the other, the latter being no more than an agent for the former's business. American Cities Power & Light Corp. v. Williams, Sup., 74 N.Y.S.2d 374 (1947); General Acc., Fire & Life Assur. Corp. v. Goodyear Tire & Rubber Co., Sup., 25 N.Y.S.2d 68 (1940). However, we could not find any cases where service on a corporation was held to be service on a controlling individual.

[6]. The general test in New York is that "[t]he corporate entity may be disregarded where it is used as a cloak or cover for fraud or illegality." Jenkins v. Moyse, 254 N.Y. 319, 324, 172 N.E. 521, 522, 74 A.L.R. 205 (1930). The individual is reached only where it can be said that the corporation is really just his *"alter ego."* City Bank Farmers Trust Co. v. Macfadden, 13 A.D.2d 395, 401, 216 N.Y.S.2d 215, 222 (1961), affirmed, 12 N.Y.2d 1035, 239 N.Y.S.2d 680, 190 N.E.2d 24 (1963). It is valid to organize a corporation for the purpose of avoiding personal liability. Bartle v. Home Owners Cooperative, 309 N.Y. 103, 127 N.E.2d 832 (1955). On the other hand, if the individual's money is shifted in and out of the corporation without any formality, the corporate entity may be disregarded.

Walkovszky v. Carlton, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). In general, when a corporation's veil is pierced, the person or corporation held liable is the one which has made the actual financial investment and has a direct financial stake in the dealings, in addition to actual control over the corporation. See Beol, Inc. v. Dorf, 22 Misc.2d 798, 193 N.Y.S.2d 394 (1959); Mangan v. Terminal Transportation System, 157 Misc. 627, 284 N.Y.S. 183 (1935), affirmed, 247 A.D. 853, 286 N.Y.S. 666, motion for leave to appeal denied, 272 N.Y. 676, 286 N.Y.S. 666 (1936).

Thus in order to make out a case against Goldstein appellant would have to show that the Wilson Line of New York and the Wilson Steamship Corporation were really just doing the business of Goldstein, and that Goldstein had a substantial stake in their operation and control over their activities. See, in addition to the cases cited above, Rapid Transit Subway Const. Co. v. City of New York, 259 N.Y. 472, 182 N.E. 145 (1932); International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N.Y. 285, 79 N.E.2d 249 (1948); Alfred P. Sloan Foundation, Inc. v. Atlas, 42 Misc. 2d 603, 248 N.Y.S.2d 524 (1964), affirmed, 23 A.D.2d 820, 258 N.Y.S.2d 807 (1965); Glassman v. Glassman, 19 A.D. 2d 801, 243 N.Y.S.2d 194 (1963); Petrovich v. Felco Chemical Corp., 194 Misc. 111, 86 N.Y.S.2d 327 (1949).

porate regularity which usually requires the party seeking to have the corporate entity disregarded to come forward with a substantial showing that the corporation was really a dummy for the person sought to be held liable.[7] In this case, appellant did not raise this theory in her amended complaint in New York; her lawyer did not proceed on that theory in the District Court here. Although there is some indication that Wilson Line of New York was simply a "shell" for its parent corporation, Wilson Steamship Corporation, and there is an indication that the latter corporation was underfinanced (a factor to be considered in determining whether the corporate veil should be pierced[8]), there is no evidence that Goldstein was the controlling influence behind those corporations, or even that he had a financial stake in them.

Given the record in this unenlightening state, given the fact that appellant never appeared to be proceeding on this theory, and given the fact that the determination whether the New York courts would pierce the veil of a particular corporation is best made by those courts, we decline appellant's invitation to rule on this matter.[9] We leave it open to appellant to raise in the New York courts, should those courts allow it, this predicate for jurisdiction.

Affirmed.

---

7. *See* cases cited in Note 6, *supra*.

8. *See* Annot., 63 A.L.R.2d 1051 (1959).

9. This disposition makes it unnecessary to reach a potentially troublesome area. As stated in Part II, *supra*, when a party seeks to enforce a judgment of one state in a court of another, the fact of the judgment raises a presumption of valid jurisdiction over the parties, and a "heavy" burden shifts to the defendant to disprove jurisdiction. Taken literally, this presumption might mean that the defendant must hypothesize every possible basis for jurisdiction and negative each one.

If this were the import of the presumption of jurisdiction, the consequences would be quite harsh. It is well known that proving a negative is often a hopeless task. Further, it is often not clear what all the possible bases for jurisdiction are (*e. g.*, in this case it is a novel question whether piercing a corporate veil to get to an individual would bring the individual within the court's jurisdiction under New York's statute). Also, the possible basis for jurisdiction might have a counter-presumption of its own (*e. g.*, a heavy burden usually rests on the person seeking to pierce the corporate veil to show that the corporation is really a sham).

We think the presumption of jurisdiction should be read flexibly to cover only the stated bases for jurisdiction (if any), plus any other apparent or obvious bases. Further, it would be helpful if, in the enforcing forum, the party introducing the judgment informs the court prior to the proceedings of the various realistic predicates for jurisdiction.

Whether the situations will be frequent in which this problem arises we do not know; hopefully the cases will tend to be litigated (as have the Supreme Court cases dealing with the issue) within the narrow confines of a defendant attempting to disprove the agreed upon sole basis for jurisdiction.