**CIVIL AERONAUTICS BOARD,**
**Plaintiff,**

v.

**SCOTTISH–AMERICAN ASSOCIATION,**
**INC., et al., Defendants.**

**No. 74–C–915.**

United States District Court,
E. D. New York.

Jan. 9, 1976.

Rex E. Lee, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D. C., David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., David J. Anderson, Raymond D. Battocchi, Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff; James W. Tello, Bureau of Enforcement, C.A.B., Washington, D. C., of counsel.

George S. Meissner, Brooklyn, N. Y., for defendants Francis John Folan and Julia Ann Folan.

## MEMORANDUM AND ORDER

JUDD, District Judge.

Plaintiff seeks, by motion for summary judgment pursuant to F.R.C.P. 56, a permanent injunction compelling the defendants Francis John Folan and Julia Ann Folan, to make refunds out of their personal assets to purchasers of affinity charter air transportation.

This is not the ordinary motion for summary judgment on affidavits where facts may be disputed. The two individual defendants and other witnesses have been deposed; there has been testimony in court hearings on this and related matters in the action; and the court made many findings of fact in connection with a preliminary injunction granted on July 28, 1975 which has not been appealed.

### Facts

The Scottish-American Association, Inc. (hereinafter Scottish-American) is a membership corporation organized under the law of the State of New York. It was organized as a social and philanthropic group for

Americans of Scottish ancestry. It was founded by Francis John Folan, who served as its chief operating officer. Scottish-American has its principal offices at 6809 Fourth Avenue, Brooklyn, New York.

Travel-A-Go Go (hereinafter Travel) is a travel agency organized under the Business Corporation Law of the State of New York. Travel's offices also are located at 6809 Fourth Avenue, Brooklyn, New York.

Julia Ann Folan is the incorporator of Travel. Francis John Folan and Julia Ann Folan, husband and wife, controlled and operated all of Travel's activities.

During 1974 Scottish-American became actively engaged in the chartering of aircraft for flights between New York and points in Europe, primarily London and Glasgow. Scottish-American did not limit its charter flight passengers to its *bona fide* members. On the contrary, Scottish-American accepted passengers on its flights who were solicited as customers of Travel. Scottish-American granted nominal membership to anyone seeking to participate in its charter flights. Many of these people were not *bona fide* members of Scottish-American for over six months at the time they travelled on charter flights operated by Scottish-American, but were merely members of the general public who became nominal members of Scottish-American in order to take advantage of its charter flights. Tickets on the charter flights were sold at a firm price rather than on a pro rata share of the cost of each charter.

During the summer of 1974 Pan American World Airways cancelled its charter program with Scottish-American based on the latter's inability to meet certain filing requirements of the British aeronautical authorities. As a result of this cancellation, Francis John Folan, chief operating officer for Scottish-American, on his own authority, made arrangements for Scottish-American's charter passengers to fly on regularly scheduled flights at regular rates. The added cost for these flights, due to the higher rate for scheduled flights, as opposed to charter flights, was provided from the deposits of passengers for charter flights scheduled to depart at later dates. As a result, no funds remained to cover the expense of these later flights. Approximately 1,700 passengers have failed to receive either their charter flight or a refund of their deposit.

On August 2, 1974 District Judge Platt entered a temporary restraining order prohibiting the defendants from violating the Federal Aviation Act of 1958, 49 U.S.C. § 1371(a), the Civil Aeronautics Board's regulations concerning charter air transportation, 14 C.F.R. Parts 207, 208, 212 and 214, and the Civil Aeronautics Board's Cease and Desist Order 72–9–3, issued September 1, 1973. The temporary restraining order, among other things, enjoined Mr. and Mrs. Folan from failing to make prompt refunds of all transportation which had not been performed, and from making expenditures of more than $1,500 from corporate or personal assets. When the temporary restraining order brought about no refunds by the Folans, CAB instituted a proceeding to hold them in contempt. At this hearing, testimony was taken of Mr. Folan and of George Kearney, who represented him on August 2, 1974. It appeared that Mr. Kearney had taken the responsibility himself not to oppose any provisions of the temporary restraining order. However, he had not been in contact with the Folans before the order was presented, and there was a possible conflict of interest with them, because he was suing Mr. Folan personally in the Supreme Court of the State of New York. Consequently, the court directed that the temporary restraining order be modified to the extent that any finding of personal liability of Francis John Folan and Julia Ann Folan to make refunds be deleted, and the motion for contempt be held in abeyance pending further depositions. Apparently, no order was entered on this decision.

The court had granted a preliminary injunction against other parties to the action, who contested the CAB's position concerning affinity charter flights both on the facts and on the law. An appeal from this preliminary injunction of October 9, 1974 re-

sulted in its affirmance by the United States Court of Appeals on March 7, 1975. *Civil Aeronautics Board v. Carefree Travel, Inc.*, 513 F.2d 375 (2d Cir. 1975).

By its Memorandum and Order dated July 28, 1975 this court granted a preliminary injunction against Scottish-American, Travel, and the Folans, consistent with the provisions of the temporary restraining order. In addition, the court adopted certain findings of fact and conclusions of law, the substance of which is outlined herein.

The court at the same time set September 2, 1975 for trial on the merits. On that day defendants were not ready to proceed, but stipulated in open court that, except for the personal liability of Francis John Folan and Julia Ann Folan, the provisions of the preliminary injunction might be entered against the defendants as a permanent injunction.

Francis John Folan and his wife, Julia Ann Folan, have been chiefly responsible for the organization and operation of Scottish-American and Travel since their inception. Scottish-American operated, rent-free, out of the offices of Travel at 6809 Fourth Avenue, Brooklyn, New York. The Folans operated and controlled Travel. Travel's offices are in a building owned by Folmarcon, a Folan family-owned company.

Francis Folan was the only person authorized to sign Scottish-American checks. Mr. Folan used Scottish-American funds on occasion to pay off obligations of Folmarcon. Scottish-American funds were used for the personal obligations of the Folans on occasion. The extent of the Folans' reliance on Scottish-American's resources for their personal obligations is underlined by the fact that the Folans did not maintain a personal checking account in their own name, except for the limited purpose of making payments on a note related to their liquor business. The record is clear that Mr. Folan, the only person with authority to sign Scottish-American checks, did in fact pay certain personal obligations with Scottish-American resources.

The court found all of these facts when the plaintiff's motion for a preliminary injunction was granted in the court's Memorandum and Order of July 28, 1975. At that time this court declined to require the individual defendants to refund moneys from their personal assets to persons who made deposits for charter air transportation never provided. The court did, however, order the defendants to use their best efforts to obtain such refunds from the assets of Scottish-American. Furthermore, in order to preserve any personal assets should the plaintiff ultimately prevail on the issue of the individual defendants' personal liability, the court continued the provision in its temporary restraining order proscribing the expenditure or conversion of the individual defendants' personal assets in excess of $1,500.

The failure of the defendants' best efforts to date to make such refunds is confirmed by many letters received from Scottish-American passengers who were denied their flights or refunds.

In a proceeding brought by the Attorney General of New York in the Supreme Court, New York County, Francis John Folan was enjoined from engaging directly or indirectly in any travel business activities in this state unless he first made full restitution of any payments made by passengers for services not rendered, and he was ordered to turn over to the Attorney General any deposits remaining in his possession or recovered from air carriers. The Attorney General's application for the appointment of a receiver was denied, however, without prejudice to the bringing of a plenary action under Section 1101 of the New York Not-for-Profit Corporation Law.

At the last hearing in this court on October 10, 1975, the Assistant Attorney General in charge reported that no action had yet been taken for the appointment of a receiver, and that many default judgments had been obtained in Small Claims Court actions, but that they were apparently worthless.

Mr. Folan's attorney asserted at the time that he had not been paid for over a year

and that he did not know of any funds which were available to pay even his attorney's fees. Depositions of the Folans by CAB have already covered some of the areas that would be explored in proceedings supplementary to judgment, but the court is not aware of any substantial personal assets being discovered.

Mr. Folan's attorney stated, at a hearing on February 26, 1975, that he was still holding a check from Aviation Insurance Consultants, to the order of F. Folan, drawn on the Royal Bank of Scotland, for £ 22,823, dated July 12, 1974, but that his efforts to realize on the check had been unsuccessful. The validity and collectibility of the check are matters not before the court on this motion.

## Discussion

The issue before the court is whether Francis John Folan and Julia Ann Folan should be held personally liable on the obligations of Scottish-American and Travel for the refunds to its prospective charter passengers.

Resolution of this case does not require an extensive review of the law of New York on "piercing the corporate veil." While New York courts have demonstrated a reluctance to impose such personal liability, *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); *Bartle v. Home Owners Cooperative, Inc.*, 309 N.Y. 103, 127 N.E.2d 832 (1955); *Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 155 N.E. 58 (1926); *cf. Pardo v. Wilson Line*, 134 U.S. App.D.C. 249, 414 F.2d 1145 (1969), they have recognized that circumstances may exist to justify the imposition of personal liability.

The avoidance of personal liability is a privilege of doing business in the corporate form. Such a privilege may be lost, and the so-called corporate veil pierced " 'to prevent fraud or to achieve equity.' " *Bartle v. Home Owners Cooperative, Inc.*, 309 N.Y. 103, 106, 127 N.E.2d 832, 833 (1955), citing *International Aircraft Trading Co. v. Manufacturers Trust Co.*, 297 N.Y. 285, 292,

79 N.E.2d 249. The privilege of limited liability bestowed upon corporate entities may be lost where the stockholders are in reality carrying on the business in their personal capacities for personal ends. *Walkovszky v. Carlton*, 18 N.Y.2d at 418, 276 N.Y.S.2d at 588, 223 N.E.2d 6. Similarly, personal liability may be imposed where the individuals owning the corporation are "shuttling their personal funds in and out of the corporations 'without regard to formality and to suit their immediate convenience.' (*Weisser v. Mursam Shoe Corp.*, 2 Cir., 127 F.2d 344, 345, 145 A.L.R. 467, supra.)" *Walkovszky v. Carlton*, 18 N.Y.2d at 420, 276 N.Y.S.2d at 590, 223 N.E.2d at 10.

In the case at hand there is no factual dispute that Francis John Folan did shuttle Scottish-American funds to cover personal expenses. Additionally, this court has already found that the defendants violated CAB regulations concerning charter air transportation and that members of the general public have lost their deposits as a result.

This case is not strictly a case of piercing the corporate veil, since it also involves personal liability for misapplication of corporate funds. Although CAB does not assert that Scottish-American was required under its rules to maintain an escrow account for moneys received from passengers, there was a common law duty in Scottish-American and its officers to apply such moneys toward purchase of the transportation for which they had been paid. Mr. Folan's liability for such misapplication of funds finds support in Section 160 of the American Law Institute's *Restatement of the Law of Restitution*. See also A.L.I., *Restatement, Agency* 2d §§ 402(a), (e), (g), 404. As was held in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 548 (1928—Cardozo, J.), a fiduciary may incur liability even though he is acting "in all good faith" and without " a conscious purpose to defraud." Good faith would not be available as a defense here, since there could be no right to use a future passenger's money to supplement an earlier passenger's fare. Even an indirect benefit to a fiduciary is

enough to impose personal liability. See *Estate of Mark Rothko*, Sur., 362 N.Y.S.2d 673 (Surr.Ct.N.Y.Co.1975), dealing with executor Reis' liability.

■ It is undisputed that Mr. Folan directed that deposits made for future flights be used to give current passengers more expensive transportation than they had paid for. Even if he is not liable for all obligations of Scottish-American, he is responsible to customers whose money was diverted from the purpose for which it was received. He may have hoped ultimately to get refunds from the airlines from which he purchased the regular price tickets, but he had no right to subject the passenger customers to the risk that such refunds might be refused as illegal or even delayed beyond the times when the next flights were scheduled.

The defendants are mistaken in relying on the doctrine that a corporate officer is not to be held personally liable for decisions, made in his corporate capacity, resulting in the corporation's breaching its contracts. *Ariate Compania Naviera, S 1. v. Commonwealth Tankship Owners, Ltd.*, 310 F.Supp. 416, 420 (S.D.N.Y.1970). The defendants' liability here is not based on their inducing a breach of a corporate contract; rather their liability flows from their misapplication of trust funds. Imposition of liability in this latter situation does not frustrate the purpose of the doctrine cited in *Ariate*—limited liability for persons doing business in the corporate form. *Application of Brookside Mills, Inc.*, 276 App.Div. 357, 367, 94 N.Y.S.2d 509, 518 (1st Dept. 1950).

This court finds that the facts in this case, on which there is no material dispute, justify the imposition of personal liability upon Francis John Folan. His conduct of using Scottish-American funds for personal expenses, of operating Scottish-American charter flights in violation of applicable CAB regulations, and of causing the loss of deposits by members of the general public, justifies such a decision.

The facts relating to Julia Ann Folan do not justify similar treatment. The court's previous findings of fact and the depositions and testimony of the Folans all indicate that Mrs. Folan's role in the operation of Scottish-American was marginal in comparison with her husband's. Mrs. Folan did not have authority to sign Scottish-American checks. Nor was she the person who authorized the use of passenger deposits to cover the costs of regular schedule tickets after the Pan Am cancellation. Although she did work at the 6809 Fourth Avenue office, her responsibilities centered upon telephone communications with prospective charter passengers. For all of these reasons, the equities are entirely different from the case of her husband.

■ The Folans challenge the authority of CAB to obtain an order for refunds to passengers who are not parties to the action. There is ample authority in cases by other agencies, however, for directing refunds "as an equitable adjunct to an injunction decree." *Porter v. Warner Holding Co.*, 328 U.S. 395, 399, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332, 1337 (1946) *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *University of Southern California v. Cost of Living Council*, Em.App., 472 F.2d 1065, 1070 (1972); *Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972).

Defendants also assert that summary judgment in this case is forbidden by the rule stated in *Heyman v. Commercial and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975), that the court

. . . must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought.

Even under that rule, there is no issue of fact in this case which requires a trial.

The CAB asks the court to appoint a trustee to marshal the defendants' assets, distribute them to the prospective passengers whose money was not refunded, and

bring suit on any claims which may exist. The appointment of a trustee is an appropriate remedy. 49 U.S.C. § 1487(a); *cf. Securities and Exchange Commission v. Manor Nursing Centers, Inc., supra,* 458 F.2d at 1105. Before appointing a trustee, however, the court should be satisfied that there is a source of funds to support the trustee in further search for assets and in pursuing any appropriate litigation.

If the passengers' deposits were exhausted in paying the extra cost of regular flights for earlier passengers, and Mr. Folan is without assets, the direction to make refunds and the appointment of a trustee may be an exercise in futility, unless a good cause of action exists against one of the airlines.

Since the New York Attorney General has authority to apply for the appointment of a receiver in the state court, and has offered his cooperation in the collection of funds, consultation between the CAB and the New York Attorney General is an appropriate first step, in the interest of efficiency and effectiveness, before any trustee is appointed.

Counsel for Mr. Folan suggests potential conflict between the claims of this court's trustee and a trustee in bankruptcy, if one is appointed in the future. Since no bankruptcy petition has been filed, that issue is not presently before the court, and in any case, does not affect the imposition of liability.

It is ORDERED that the plaintiff's motion for summary judgment is granted as respects Francis John Folan and denied as respects Julia Ann Folan. Plaintiff shall submit a form of judgment on two days' notice, accompanied by a memorandum concerning the designation of a trustee and the source of funds for his necessary expenses, and any views of the New York Attorney General on the subject.