Earl BRATTON et al., Plaintiffs,

v.

Joel SHIFFRIN et al., Defendants.

HEMISPHERE TRAVEL, INC., et al., Plaintiffs,

v.

FIRST NATIONAL BANK OF HIGH-LAND PARK et al., Defendants.

Roger CHAPMAN et al., Plaintiffs,

v.

FIRST NATIONAL BANK OF HIGH-LAND PARK, Defendant.[1]

Nos. 76 C 4282, 76 C 4707 and 77 C 284.

United States District Court,
N. D. Illinois, E. D.

Aug. 11, 1977.

1. Thus far four separate lawsuits have been filed as a result of these incidents. The three actions brought by private plaintiffs are consolidated here for the purpose of ruling on the motions to dismiss by the defendants First National Bank and Joel Shiffrin. Fed.R.Civ.P. 42(a). The fourth action was commenced by the Civil Aeronautics Board pursuant to its general enforcement powers under the Federal Aviation Act. For a full understanding of this opinion, reference should be made to the C.A.B. case as well. *C.A.B. v. Tour Travel Enterprises, Inc.,* 440 F.Supp. 1265, No. 76 C 4693 (N.D. Ill.1977).

Christopher A. Bloom, Green & Brandwein, Chicago, Ill., for Roger Chapman, et al. and Earl Bratton, et al.

Marvin Green, Law Offices of Marvin Green, Chicago, Ill., for Roger Chapman, et al.

Lloyd S. Kupferberg, Martin W. Salzman, David N. Missner, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for First National Bank of Highland Park and Joel Shiffrin.

Rappaport & Meyer, Robert L. Berkover, McCracken & Walsh, Chicago, Ill., for Hemisphere Travel, Inc. and Victoria Travel, Ltd.

Dannen, Crane, Heyman & Haas, Chicago, Ill., for Gerald Mann, Richard Tauber, Sunshine Travel of Nevada, Inc., Sunshine Travel Agency, Inc. and Tour Travel Enterprises, Inc.

Kenneth F. Levin, Beatty, Levin & Holland, Thomas R. Meites, Chicago, Ill., Thomas P. Sullivan, U. S. Atty., and Thomas Dent, Asst. U. S. Atty., for Earl Bratton, et al.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiffs are individual travelers and retail travel agencies who made deposits to reserve places on numerous charter tours to such places as Mexico, Hawaii, and Las Vegas. The tours were organized and sold

by the defendant travel companies. Defendants include Tour Travel Enterprises, the wholesale tour operator which organized the trips; Sunshine Travel Agency and Sunshine Travel of Nevada, two retail travel agencies dealing in tours organized by Tour Travel; Gerald Mann and Richard Tauber, owners and officers of the three travel companies; and the First National Bank of Highland Park and its vice president, Joel Shiffrin. The Bank and Shiffrin held accounts for the other defendants, including special escrow accounts required by regulation for charter tour deposits.

The tours were scheduled to depart after October 15, 1976. On that date or shortly thereafter, involuntary bankruptcy proceedings were initiated against Tour Travel Enterprises, Sunshine Travel and Sunshine Travel of Nevada.[2] The scheduled tours never occurred and the deposits made by the plaintiff tour participants have not been refunded. Some of these deposits were made to the travel companies, others were deposited directly with the Bank.

Plaintiffs have requested that the Bank refund their monies. Apparently the funds on deposit in the special escrow accounts are insufficient to reimburse all disappointed tour participants. The Bank filed an interpleader action in bankruptcy court concerning the deposits it holds. On March 17, 1977, the bankruptcy judge dismissed the interpleader, ruling the court lacked summary jurisdiction over the escrow funds. *In re Tour Travel Enterprises, Inc.*, No. 76 B 8014 (N.D.Ill., March 17, 1977).

Plaintiffs allege that defendants violated certain C.A.B. regulations governing these charter tour deposits. In particular they claim that defendants First National Bank of Highland Park and Joel Shiffrin violated

the regulations dealing with special escrow accounts for tour deposits. Under 14 C.F.R. §§ 378.16 and 378a.31 (1977), all deposits made by tour participants to operators or retail travel agents must be deposited in a special escrow account with a federally insured bank or savings and loan association. The bank is to maintain a separate accounting for each tour. The depository bank, the tour operators and the participating air carriers are to enter into a depository agreement governing the deposits.[3] Under the regulations, disbursements may be made from the accounts only under certain circumstances. The bank may pay the direct air carrier, hotels, sightseeing and other surface accommodations up to a fixed per cent of the total deposits received by the bank. If a tour is cancelled, the bank is to make refunds directly to the tour participants. Regulations 14 C.F.R. §§ 378.18 and 378a.32 (1977) forbid the bank or the tour operator from making disbursements from tour-participant deposits except in accordance with these regulations. In addition, the tour operator must furnish a surety bond or other security arrangement to insure the financial responsibility of the tour operator and the performance of tour services in accordance with the contract between the operator and the tour participants. In this case, in lieu of a bond, Tour Travel entered into a surety trust agreement with the First National Bank inuring to the benefit of the tour participants.[4] Plaintiffs further allege that the Bank breached its duties and obligations under the escrow and surety trust agreements.

Defendants First National Bank and Joel Shiffrin have moved to dismiss the complaints for lack of subject matter jurisdiction, failure to state a claim, and failure to

**2.** Tour Travel Enterprises and Sunshine Travel Agency were adjudicated bankrupt on October 19, 1976. Sunshine Travel of Nevada and other affiliates followed on October 26, 1976. *In re Tour Travel Enterprises, Inc.*, No. 76 B 8014 (N.D.Ill.1976); *In re Sunshine Travel Agency, Inc.*, No. 76 B 8015 (N.D.Ill.1976); *In re Sunshine Travel of Nevada, Inc.*, No. 76 B 8075 (N.D.Ill.1976). All related cases were consolidated on December 23, 1976, into No. 76 B 8014.

**3.** Tour Travel Enterprises and First National Bank of Highland Park were party to such an agreement. *See* Exhibit A of the First Amended Complaint in *Bratton v. Shiffrin*, No. 76 C 4282 (N.D.Ill., filed January 3, 1977).

**4.** *See* Exhibit B of the First Amended Complaint in *Bratton v. Shiffrin*, No. 76 C 4282 (N.D.Ill., filed January 3, 1977).

join an indispensable party (the trustee in bankruptcy).[5] We grant the motions to dismiss for failure to state a claim.

*Jurisdictional Allegations*

■■■ Defendants First National Bank and Shiffrin challenge plaintiffs' claim of jurisdiction based on the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 *et seq.* (1970), and 28 U.S.C. §§ 1331(a) and 1337 (1970). 28 U.S.C. § 1337 (1970) gives this court jurisdiction over cases arising under statutes enacted pursuant to Congress' authority to regulate interstate commerce, regardless of the amount in controversy. Clearly the Federal Aviation Act of 1958 is an act regulating commerce. *Rauch v. United Instruments, Inc.,* 548 F.2d 452, 455 (3d Cir. 1976). Because plaintiffs assert that the provisions of the Federal Aviation Act and the regulations promulgated thereunder provide for a private right of action on their behalf, we have jurisdiction under Section 1337 to determine whether a federal claim has been stated.[6] *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Enders v. American Patent Search Co.,* 535 F.2d 1085, 1087–88 (9th Cir. 1976), *cert. denied,* 429 U.S. 888, 97 S.Ct. 242, 50 L.Ed.2d 170 (1977).

*Explicit Provisions of 49 U.S.C. § 1487(a)*

There are two possible routes to establishing a private remedy under the Federal Aviation Act; the first is by reliance on the explicit provisions of the Act, the second is by implying a private right of action from those provisions. Section 1487 of the Act gives the Civil Aeronautics Board the authority to enforce the statute, rules and regulations. Further, under that provision "any party in interest" may seek injunctive relief in the district court for a violation of Section 1371(a). 49 U.S.C. § 1487(a) (1970). Thus, if a violation of Section 1371(a) were involved, plaintiffs could rely on the explicit grant of Section 1487(a). *See generally* Annot., 19 A.L.R. Fed. 951 (1974).

■■■ There are several reasons why this provision does not apply to the Bank or its officer. Initially, one need only read the language of Section 1371(a):

No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation.

The definition of "air carrier" includes anyone who directly or indirectly engages in air transportation. 49 U.S.C. § 1301(3). The concept of an indirect air carrier is broad enough to include a tour operator who arranges charter flights. *C.A.B. v. Carefree Travel, Inc.,* 513 F.2d 375, 387 (2d Cir. 1975). However, we do not feel justified in extending the definition to encompass the Bank. While it is possible the Bank is an agent of an air carrier (at least for some purposes),[7] this finding alone would not make the agent liable for possible statutory violations by the principal.[8] Plaintiffs' allegations do not support a claim of a breach of Section 1371(a) by the Bank or Shiffrin.

■■■ Secondly, the loss of the tour deposits was not caused by the failure of anyone to be certified as an air carrier, so Section 1371(a) is simply not involved in this case.

■■■ Finally, Section 1487(a) is a provision for injunctive relief. Any additional relief must be ancillary to the equitable remedy provided for in the statute. The

---

5. Defendants also claim these actions must be stayed under Rules 401 and 601, Fed.R.Bank.P. 401, 601.

6. Where a complaint claims invasion of a federal right, the court has jurisdiction to determine whether a claim has been stated. Thus a dismissal should be made on the merits under Rule 12(b)(6) for failure to state a claim, and not for want of subject matter jurisdiction. 1 J. Moore, Federal Practice ¶ 0.62[2.–2], at 664 (2d ed. 1977).

7. The Bank as escrowee may be a "special" agent for both parties, with the terms of the agency relationship defined by the escrow agreement.

8. We do not mean to imply a finding of a violation of § 1371(a) by any of the travel companies at this time.

private plaintiffs have not specifically requested injunctive relief; their prayer for relief seeks money damages.[9] Accordingly, the provisions of Section 1487(a) do not provide them with an explicit statutory remedy of a private nature.

### Implied Private Right of Action

■ The next course of inquiry is to determine whether plaintiffs have an implied private right of action under the statute and the regulations. Plaintiffs allege violations of certain C.A.B. regulations governing charter tour deposits, 14 C.F.R. §§ 378.-16, 378.18, 378a.31, 378a.32 (1977). In order to decide whether a private right of action exists under these regulations, we must examine the statutory provisions under which they were promulgated. An administrative agency cannot create a federal private right of action by enacting regulations; the right must be implied from the underlying statutory authority.

■ Plaintiffs have provided us little assistance, citing the entire Federal Aviation Act of 1958 as their jurisdictional base.[10] After reviewing the statutory authority cited in 12 C.F.R. Part 378 (1977),[11] we have concluded that the regulations establishing security arrangements for charter tour deposits were promulgated pursuant to the authority of 49 U.S.C. § 1371(n)(2) (1970). That provision reads:

In order to protect travelers and shippers by aircraft operated by supplemental air carriers, the Board may require any supplemental air carrier to file a perform-

ance bond or equivalent security arrangement, in such amount and upon such terms as the Board shall prescribe, to be conditioned upon such supplemental air carrier's making appropriate compensation to such travelers and shippers, as prescribed by the Board, for failure on the part of such carrier to perform air transportation services in accordance with agreements therefor.

A supplemental air carrier is defined as a carrier engaged in providing charter trips. 49 U.S.C. §§ 1301(35) and (36). Tour operators, such as Tour Travel Enterprises, who arrange charter tours are properly within the mandate of this statutory provision. Section 1324(a) grants the Board the general power to make such regulations as it deems necessary to carry out the provisions of the Federal Aviation Act. 49 U.S.C. § 1324(a) (1970). In light of this broad statutory authority, we find that Regulations 378.16, 378.18, 378a.31, 378a.32 are valid promulgations implementing 49 U.S.C. § 1371(n)(2) (1970). It appears this is a case of first impression on implying a private right of action under this provision, although the question has arisen regarding other sections of the Act.[12]

In determining whether a private right of action should lie under the statutory provision and regulations, we are aware of the directive that it is "the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d

**9.** The plaintiffs in *Bratton v. Shiffrin* requested "such other and further relief as may be just and equitable."

**10.** The only specific allegation is that of a violation of 49 U.S.C. § 1485(e), which reads:
It shall be the duty of every person subject to this chapter, and its agents and employees, to observe and comply with any order, rule, regulation, or certificate issued by the Administrator or the Board under this chapter affecting such person so long as the same shall remain in effect.

**11.** 14 C.F.R. Part 378 states that the provisions of that part are issued under the authority of 49 U.S.C. §§ 1301, 1324, 1371, 1372, 1379 and 1384.

**12.** *See, e. g., Rauch v. United Instruments, Inc.,* 548 F.2d 452 (3d Cir. 1976) (Section 1421); *Wolf v. Trans World Airlines,* 544 F.2d 134 (3d Cir. 1976) (Sections 1381, 1373(b)), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); *Polansky v. Trans World Airlines,* 523 F.2d 332 (3d Cir. 1975) (Sections 1374(b) and 1381); *Nader v. Allegheny Airlines, Inc.,* 167 U.S.App.D.C. 350, 512 F.2d 527 (1975) (Section 1374(b)), *rev'd on other grounds,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Fitzgerald v. Pan American World Airways,* 229 F.2d 499 (2d Cir. 1956) (Section 1374(b)); and *Gabel v. Hughes Air Corp.,* 350 F.Supp. 612 (C.D.Cal.1972).

423 (1964). However, a private remedy is not to be implied for every statutory violation. We must test this action according to the guidelines established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for the judicial implication of private remedies. The Court set out four relevant factors to be weighed in determining whether a private remedy is implicit in a statute not expressly providing one. "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted' . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

Applying these factors to the case at bar, we find that the individual plaintiff tour participants are within the class for whose benefit the statute was passed and the regulations promulgated. The explicit language of 49 U.S.C. § 1371(n)(2) (1970) reads "[i]n order to protect travelers," the Board may require supplemental air carriers to file a security arrangement to insure compensation to travelers for failure to perform agreed upon services. The individual plaintiffs became tour participants once their deposits were made; they are clearly within the class for whose "especial" benefit this statutory provision was enacted.[13] The legislative history of the regulations further verifies the individual plaintiffs' status as members of the protected class. The regulations were proposed "to insure the financial responsibility of the tour operator to the traveling public." Notice of Proposed Rule Making, 30 Fed.Reg. 281, 282 (1965) (explanatory statement issued by the C.A. B.).[14] However, it is equally clear that the plaintiff travel agencies are not within the class for whose "especial" benefit the statute and regulations were enacted. Travel agencies are not members of the traveling public. Thus, the plaintiff agencies fail to meet the threshold requirement for implying a private right of action.

The mere fact the individual tour participants fall within the protected class is insufficient in itself to warrant implying a private right of action on their behalf. "[T]he inference of such a private cause of action not otherwise authorized by the statute must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the Act." *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) ("Amtrak"). Plaintiffs' claim must be tested against the additional criteria established in *Cort v. Ash, supra.*[15]

The next inquiry is whether there is any indication of legislative intent either to create or deny a private remedy. The legislative history of the Federal Aviation Act provides little guidance. Plaintiffs' briefs

---

**13.** *See* H.R.Rep.No.1950, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.Code Cong. & Admin.News 1844, 1866–67.

**14.** *See also* Inclusive Tours by Supplemental Air Carriers, Certain Foreign Air Carriers, and Tour Operators: Modification of Surety Bond Requirements for Tour Operators, 36 Fed.Reg. 6586 (1971) (Preamble to regulations amending the surety bond requirements "to provide better protection to the public from defalcations by tour operators or breach of the contract between the tour operators and the tour participant.")

**15.** Courts vary in their interpretation of whether all four factors must be considered in a given case. *Compare Rauch v. United Instruments, Inc.,* 548 F.2d 452, 460 (3d Cir. 1976) *with People's Housing Development Corp. v. City of Poughkeepsie,* 425 F.Supp. 482, 490 (S.D.N.Y. 1976). The Supreme Court's application of *Cort* has likewise varied. *Compare Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 37–41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) *with Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 477–78, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). It is apparent that the criteria established in *Cort* are flexible; the analysis of the factors is qualitative, not purely quantitative.

are devoid of any reference to legislative history which would support a private right of action, and the court's own review of the relevant documents has revealed none.[16] The statute itself provides for C.A.B. enforcement of all statutory provisions and regulations and private enforcement of violations of Section 1371(a). 49 U.S.C. § 1487(a) (1970). This does not necessarily mean that these enforcement methods preclude private actions under other provisions.[17] However, this case falls within the Supreme Court's reasoning in *Amtrak, supra*:

> [W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. . . This principle of statutory construction reflects an ancient maxim—*expressio unius est exclusio alterius*. Since the Act creates a public cause of action for the enforcement of its provisions and a private cause of action only under very limited circumstances this maxim would clearly compel the conclusion that the remedies created in § 307(a) are the exclusive means to enforce the duties and obligations imposed by the Act.

414 U.S. at 458, 94 S.Ct. at 693. Congress provided a private remedy for violations of Section 1371(a), but not Section 1371(n), another provision of the same statutory section.[18] Section 1371(n) was added in 1962, and Section 1487(a) was not amended to provide for private enforcement of the new subsections of Section 1371.

▮ The Court in *Amtrak* notes that "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent." 414 U.S. at 458, 94 S.Ct. at 693. As we have already stated, there is no evidence of legislative intent to support implying a private cause of action under Section 1371(n)(2). Furthermore, where Congress has provided for an elaborate system of agency enforcement of a statute, that is some indication that a parallel system of private enforcement was not intended. *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

We must next ascertain whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088. The Court refers us to three cases for guidance, *Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); and *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). In all three cases, a private remedy was denied, with the Court concluding such remedy would be inconsistent with a statutory scheme which provided for agency enforcement. We agree with the analysis of Judge Haight in interpreting this third factor: "Where Congress vests enforcement responsibilities in the government agency with expertise in the particular area, the Court is inclined to regard agency enforcement as exclusive." *People's Housing Development Corp. v. City of Poughkeepsie*, 425 F.Supp. 482, 492 (S.D.N.Y.1976).

---

16. *See* S.Rep.No.688, 87th Cong., 2d Sess. (1962) and H.R.Rep.No.1950, 87th Cong., 2d Sess. (1962) (conference report), 1962 U.S.Code Cong. & Admin.News 1844; S.Rep.No.1811, 85th Cong., 2d Sess. (1958), H.R.Rep.No.2360, 85th Cong., 2d Sess. (1958), H.R.Rep.No.2556, 85th Cong., 2d Sess. (1958) (conference report), 1958 U.S.Code Cong. & Admin.News 3741–72; S.Rep.No.1661, 75th Cong., 3d Sess. (1938), H.R.Rep.No.2254, 75th Cong., 3d Sess. (1938), H.R.Rep.No.2635, 75th Cong., 3d Sess. (1938) (conference report).

17. *See J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

18. In *Cort v. Ash*, 422 U.S. at 82–83 n. 14, 95 S.Ct. 2080, the Supreme Court refused to infer from the fact a private remedy was provided in one title of the act in question an intention to deny a private remedy with regard to a different title. The Court distinguished *Amtrak* on this point, noting that in *Amtrak* an express private remedy was provided in favor of certain plaintiffs concerning the particular provision at issue. The statutory provisions involved in the instant case more closely approximate those in *Amtrak*. Here we are concerned with different subsections of the same statutory section, not two entirely separate titles of the Act.

■ · It is this factor which most forcefully militates against implying a private right of action in favor of private plaintiffs to enforce Section 1371(n)(2) and the regulations promulgated thereunder. The C.A.B. has explicit authority to enforce the statute and regulations at issue, and to seek an injunction against any further violations. 49 U.S.C. § 1487(a) (1970). In addition, as adjunct to equitable relief, the C.A.B. may obtain an order for refunds of the plaintiffs' tour deposits. *C.A.B. v. Scottish-American Ass'n, Inc.*, 411 F.Supp. 883 (E.D. N.Y.1976).

Mindful of the obligation to provide remedies necessary to effectuate the congressional purpose, *J. I. Case v. Borak*, 377 U.S. at 433, 84 S.Ct. 1555 (1964), we must also "be wary against interpolating our notions of policy in the interstices of legislative provisions." *Piper v. Chris-Craft Industries*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977), citing Justice Frankfurter in *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 11, 62 S.Ct. 875, 86 L.Ed. 1229 (1964). Where a government agency can provide private parties with the relief necessary to effectuate the congressional purposes, where there is no express provision for a private remedy and the legislative history is bereft of any indication that such a remedy should be implied, courts should be hesitant to add to the burden of the judicial system. Particularly in a case such as this where the C.A.B. has filed an action against the defendants to enjoin further violations of the Act and recover the depos-

its made by the private plaintiffs, it is unnecessary to imply a private remedy to protect the interests of the plaintiff class.[19] Not only will judicial time be conserved, but the members of the protected class will be saved the legal fees inherent in prosecuting a private suit.

Under these circumstances, we find that unlike *J. I. Case v. Borak*, judicially creating a private right of action under these regulations is "unnecessary to ensure the fulfillment of Congress' purposes" in enacting the Federal Aviation Act. *See Piper v. Chris-Craft Industries*, 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).[20] The C.A.B. has the authority to protect adequately the interests of the plaintiff charter tour participants, and the agency has taken action to protect those interests in this case. Accordingly, the third factor joins the second in weighing against implying a private right of action in this case.

The final factor for review is whether "the cause of action [is] one traditionally relegated to state law, . . . so that it would be inappropriate to infer a cause of action based solely on federal law?" *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088. Where we have found an adequate federal remedy in the agency charged with enforcing the statute, it seems anomalous to inquire into the availability of state remedies. Nonetheless we stop short of the approach taken by those courts which find the fourth factor to be inapplicable.[21] There are state remedies available to the plaintiffs. In-

<hr>

**19.** The C.A.B. filed an affidavit with its Reply Memorandum in *C.A.B. v. Tour Travel Enterprises*, 440 F.Supp. 1265, No. 76 C 4693 (N.D. Ill.1977) noting the voluminous number of filings received by the agency on charter flights. This fact has little relevance in a case where the C.A.B. has taken action. Moreover, the Supreme Court has stated that practical limitations on an agency do .not alone lead to the conclusion that any interested party should have a cause of action. *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

**20.** In deciding this question, our primary focus was on Congress' purposes in enacting the particular statutory provision in question. Section 1371(n) was passed in 1962 to provide for the

increased availability and regulation of supplemental air carriers (charters). *See* 1962 U.S. Code Cong. & Admin.News 1844. Reference to other sections of the Federal Aviation Act indicates a general purpose to promote "adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices," 49 U.S.C. § 1302(c) (1970), and to assure "the highest degree of safety in, and foster sound economic conditions in" air transportation. 49 U.S.C. § 1302(b) (1970).

**21.** *See, e. g., People's Housing Development Corp. v. City of Poughkeepsie*, 425 F.Supp. 482, 490–91 (S.D.N.Y.1976).

deed, their complaints include counts based on breach of fiduciary duty under the escrow and surety agreements, fraud, conversion and breach of contract.[22] Other courts construing provisions of the Federal Aviation Act have found the existence of such remedies sufficient to warrant denial of a private right of action.[23] Thus, the fourth factor, like the second and third, fails to support plaintiffs' claim for an implied private right of action in this case.

*Conclusion*

 The court concludes that plaintiffs do not have a private remedy in federal court. Initially, plaintiffs have not brought themselves within the explicit remedy provided private parties in 49 U.S.C. § 1487(a) of the Federal Aviation Act of 1958. Further, we hold that the C.A.B. Regulations upon which plaintiffs rely for jurisdiction, 14 C.F.R. §§ 378.16, 378.18, 378a.31 and 378a.32, and the statutory provisions under which these regulations were promulgated, in particular 49 U.S.C. § 1371(n)(2), do not confer an implied private right of action upon these plaintiffs.

Even though the individual plaintiffs are within the class for whose benefit the statute was enacted, they fail to meet the additional requirements established in *Cort v. Ash,* supra, to support the implication of a private right of action under Section 1371(n)(2) and the regulations promulgated thereunder.

Accordingly, we hold that plaintiffs do not have an explicit or implied private right of action under the regulations or statutory provisions involved in these cases and we dismiss the cases for failure to state a claim under Rule 12(b)(6). The plaintiffs must rely on the C.A.B. to vindicate their interests in federal court,[24] or they must resort to the remedies available to them in state court.

Having dismissed the federal claims, we also dismiss plaintiffs' pendent state claims for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

---

**22.** *See* Counts II and III in *Bratton v. Shiffrin,* No. 76 C 4282 (N.D.Ill., filed January 13, 1977); Count II in *Hemisphere Travel, Inc. v. First National Bank of Highland Park,* No. 76 C 4707 (N.D.Ill., filed December 23, 1976); Counts II–V in *Chapman v. First National Bank of Highland Park,* No. 77 C 284 (N.D.Ill., filed January 26, 1977).

**23.** *See, e. g., Rauch v. United Instruments, Inc.,* 548 F.2d 452 (3d Cir. 1976); *Wolf v. Trans World Airlines,* 544 F.2d 134 (3d Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); and *Polansky v. Trans World Airlines,* 523 F.2d 332 (3d Cir. 1975).

**24.** The C.A.B.'s action in seeking relief for the private plaintiffs in this case was a fact of great importance to the court's decision. Had the agency failed to act, or to seek to remedy the losses of these private plaintiffs, the result may well have been different.