John RAUCH et al.

v.

UNITED INSTRUMENTS, INC. and Tokyo Aircraft Instrument Company, Appellants.

No. 76–1184.

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1976.

Decided Dec. 30, 1976.

James D. Crawford, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Arthur Alan Wolk, Philadelphia, Pa., for appellee.

Before MARIS, KALODNER and WEIS, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

This is an appeal by the defendants from an order of the District Court for the Eastern District of Pennsylvania denying their motion to dismiss the complaint and granting plaintiffs' motion for leave to file an amended complaint. The order being interlocutory, the appeal was brought under 28 U.S.C. § 1292(b). The order was entered in an alleged class suit brought by the three plaintiffs, as joint owners of a Cessna aircraft, on behalf of themselves and all others similarly situated, against United Instruments, Inc. (herein United Instruments) and Tokyo Aircraft Instrument Company (herein Tokyo Aircraft) as defendants.

The complaint alleged that the plaintiffs' Cessna aircraft was equipped with an altimeter manufactured by Tokyo Aircraft and distributed by United Instruments which, by a directive issued by the Federal Aviation Administrator (herein the Administrator) on December 6, 1974,[1] they had been required to replace or modify to conform with the Administrator's safety standards. It was to recover the cost of removing, repairing and reinstalling this defective altimeter, approximately $75.00, as well as consequential damages, that the suit was brought. Liability was asserted in three counts under theories of breach of warranty of merchantability and fitness for a particular purpose, of strict liability in tort and ordinary negligence, and violations of the Federal Aviation Act respectively. The complaint predicated jurisdiction upon 28 U.S.C. §§ 1331 and 1337 contending that the cause of action arose under the Federal Aviation Act, the injury having resulted from the defendants' alleged violation of § 610(a)(7) of the Act, 49 U.S.C.A. § 1430(a)(7), and the Federal Aviation Regulations promulgated thereunder.

In order to add a fourth count alleging fraud and requesting punitive damages in the amount of $15,000,000, the plaintiffs moved for leave to file an amended complaint. In their proposed amended complaint, the plaintiffs set forth with greater particularity the provisions of the Act and the Federal Aviation Regulations upon which they relied. They cited §§ 313(a) and 601(a)(2) and (6) of the Act, 49 U.S.C.A. §§ 1354(a) and 1421(a)(2) and (6), which authorize the Federal Aviation Administrator to prescribe such minimum standards governing aircraft appliances and to issue such regulations as may be needed in the interest of safety in air commerce. The plaintiffs alleged that the defendants violated the regulations which require manufacturers of aircraft appliances to adhere to minimum standards, to use accepted type designs and materials and to provide for production quality controls. 14 C.F.R. §§ 21.3(b), 21.95, 21.125(b)(5) and (7), 37.3, 37.7, 37.9, 37.17, 37.120 and 145.63.

The defendants opposed the plaintiffs' motion to amend the complaint on the ground that leave to amend should be denied where it appears that the proposed amendment cannot withstand a motion to dismiss. The defendants argued that the $10,000 minimum jurisdictional amount required by 28 U.S.C. § 1331 had not been met and that the Federal Aviation Act does not provide a private cause of action in favor of the plaintiffs. They urged, therefore, that the court lacked jurisdiction of both the original complaint and the proposed amended complaint.

---

1. Airworthiness Directive No. 74–24–13.

The district court decided that a federal tort remedy could be implied in favor of the plaintiffs for violations by the defendants of the Federal Aviation Act and the regulations promulgated under it and that it had jurisdiction to hear the plaintiffs' claims. It accordingly entered the order appealed from, granting the plaintiffs leave to amend their complaint and denying the defendants' motion to dismiss. The district court's decision was made without reference to this court's opinion in *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332 (1975), which was filed shortly before the entry of the order of the district court. At the suggestion of the district court, the defendants filed a motion for reconsideration of the court's order or, in the alternative, for certification of the order for purposes of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). After considering the effect of the *Polansky* decision upon the issues before it, the district court denied the defendants' motion for reconsideration but directed that its prior order be amended to include the statement required by 28 U.S.C. § 1292(b) for an interlocutory appeal. Permission for the appeal was thereafter granted by this court.

■ As has been stated, the plaintiffs' complaint asserted that jurisdiction over their suit was conferred upon the district court by 28 U.S.C. §§ 1331 and 1337. The district court properly held that § 1331 did not confer such jurisdiction since the plaintiffs' claim did not reach the jurisdictional amount of $10,000 required by that section and this could not be cured by aggregating their claim with those of other members of the class for whom they sued.[2] The court held, however, that jurisdiction was conferred by § 1337, which gives the district courts jurisdiction of civil actions arising

under an Act of Congress regulating commerce, since the Federal Aviation Act is such an act and it confers upon the plaintiffs by implication a right of action against the defendants for damages for violation of the Act. We agree that the Federal Aviation Act is an act regulating commerce. Whether the Act confers upon the plaintiffs, by implication, a right of action against the defendants is the question which the present appeal presents. As we have seen, the district court thought that it did. We hold that it does not and reverse.

The right of a private person who has been injured by a violation of a federal statute to sue under the authority of the statute, even though it does not expressly provide for a private remedy, was stated and its limits indicated by the Supreme Court in *Texas & Pacific Ry. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916), as follows: "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied."[3] Accordingly, the federal courts have not hesitated, in appropriate instances, to find an implied remedy under a statute not expressly providing one. Thus, construing the Railway Labor Act of 1926 as impliedly authorizing the district court to grant to railroad employees injunctive relief from prohibited employer interference in their selection of union representatives, the Supreme Court stated, "As the prohibition was appropriate to the aim of Congress, and is capable of enforcement, the conclusion must be that enforcement was contemplated." *Texas & New Orleans RR. v. Brotherhood of Railway & Steamship Clerks,* 281

---

2. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

3. The question decided in *Rigsby* was whether a railroad employee injured as a result of a violation of the Federal Safety Appliance Act, which extended its safety prescriptions to railroad equipment used in both intrastate and interstate commerce, had a damage action under state law where at the time of his injury he was engaged in intrastate and not interstate commerce. Subsequent to the *Rigsby* decision, the Supreme Court concluded that a federal private right of action is not implied under the Federal Safety Appliance Act, the act under consideration in *Rigsby.* See *Tipton v. Atchison, Topeka & Santa Fe Ry.,* 298 U.S. 141, 147–148, 56 S.Ct. 715, 80 L.Ed. 1091 (1936).

U.S. 548, 569, 50 S.Ct. 427, 433, 74 L.Ed. 1034 (1930). Referring to a violation of § 14(a) of the Securities Exchange Act of 1934 which did not expressly provide for the relief sought by an injured plaintiff, the Court stated that ". . . under the circumstances here it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964).[4]

■ A private cause of action will not be implied, however, to create a remedy for every violation of a statute. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332 (3d Cir. 1975). This court in the *Polansky* case refused to imply a private breach of contract remedy under §§ 404 and 411 of the Federal Aviation Act, 49 U.S.C.A. §§ 1374(b) and 1381. Those provisions of the Act are not in issue here, however. And in *Wolf v. Trans World Airlines, Inc.,* 544 F.2d 134 (1976), we followed our *Polansky* decision in rejecting another claim to a private federal remedy under § 411 of the Federal Aviation Act and additionally refused to infer a private cause of action under § 403(b) of the Act. 49 U.S. C.A. § 1373(b). In deciding both *Polansky* and *Wolf* we carefully adhered to the guidelines which the Supreme Court had set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), in this regard. In that case the Supreme Court rejected a stockholder's claim to a right to derivative damage relief to be implied under 18 U.S.C. § 610 which prohibits monetary contributions by corporations in connection with federal elections. The Court concluded that ". . . implication of such a federal cause of action is not suggested by the legislative context of § 610 or required to accomplish Congress' purposes

in enacting the statute." 422 U.S. at p. 69, 95 S.Ct. at p. 2083. In reaching its decision the Court enunciated as guidelines four relevant factors which we applied in the *Polansky* and *Wolf* cases and which must govern the decision here. See *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332, 334 (3d Cir. 1975).

■ The first of the four questions to be considered in the process of deciding whether a cause of action is implied under a statute is whether the plaintiff is " . . 'one of the class for whose *especial*[5] benefit the statute was enacted.' " The second question for consideration is whether there is any indication of congressional intent to create or deny a private remedy? The third is whether the implication of a private remedy is consistent with the underlying purpose of the legislative scheme? And the fourth is whether it would be inappropriate to infer a cause of action based solely on federal law in that the matter is one traditionally of state concern and the remedy ordinarily relegated to the states?

■ The first consideration to which we are directed by *Cort v. Ash* requires an examination of the statute under which a private remedy is sought to be implied and its legislative history in order to determine what were the congressional objectives in enacting the statute and who were the persons who were intended to be especially benefited by it.

In the twenty years that followed the enactment of the Civil Aeronautics Act of 1938, aviation in the United States experienced phenomenal growth. Revenue passenger-miles increased from 514,791,000 in 1938 to 31,500,000,000 in 1957. Cargo transportation increased from 2,550,000 ton-miles in 1938 to 553,000,000 ton-miles in 1957. The total number of airplanes in use by certificated airlines grew from 300 to

---

4. For discussion of other statutes to which the implied remedies doctrine has been applied, *see Martinez v. Behring's Bearings Service, Inc.,* 501 F.2d 104, 106 (5th Cir. 1974).

5. The emphasis was supplied by the Supreme Court in its opinion in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) in quoting from its prior opinion in *Texas & Pacific Ry. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916).

1,841.[6] Congress met the mounting problems of coordinating private, commercial and military use of the nation's navigable airspace with the passage of the Federal Aviation Act of 1958. The legislative history of the Act reveals that the "whole purpose" of enacting the 1958 legislation was "to create a Federal Aviation Agency for better handling of problems of air safety."[7]

Subchapter VI of the Act, § 601, 49 U.S. C.A. § 1421, specifically provides that the Administrator "is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing" such minimum standards, rules and regulations governing the design, materials, construction, etc. of aircraft and aircraft appliances "as may be required in the interest of safety." The paramount concern of Congress for safety in air travel is evident in other sections of the Act spelling out the powers and duties of the Administrator. *See* §§ 302(c)(1), 307, 312(c), 602(b), 603, 604, 605(b) and 609(a) of the Act, 49 U.S.C.A. §§ 1343(a)(1), 1348, 1353(c), 1422(b), 1423, 1424, 1425(b) and 1429(a). Other parts of the Act pertaining to the functions of the Civil Aeronautics Board, the Secretary of Transportation, the National Transportation Board and the Chief of the Weather Bureau also contain indications of congressional concern for the safety of aircraft in flight. *See* §§ 102(b) and (e), 103(a) and (c), 701(a)(5) and 803 of the Act, 49 U.S.C.A. §§ 1302(b) and (e), 1303(a) and (c), 1441(a)(5) and 1463. Undoubtedly, the congressional objective of safety permeates the Act[8] and the fostering of safe air travel was the primary motive of Congress for the enactment of § 601 of the Act and the Administrator's chief concern in promulgating, under the authority of that section, the safety provisions of the Federal Aviation Regulations upon which the plaintiffs rely.[9]

■ In a broad sense, Congress, through the Federal Aviation Act of 1958, in particular § 601 and the other provisions of the Act which are dominated by a safety objective, was seeking to assure the personal safety of all persons who are potential passengers or crew members of civil and military aircraft as well as those others on the ground whose lives or property might be endangered by accidents resulting from unsafe aircraft or other unsafe flying conditions. We are satisfied that it is these persons and they alone who constitute "the class for whose *especial* benefit the safety provisions of the statute were enacted." It does not follow, of course, that upon a violation of the Act or the regulations with respect to aircraft safety every potential passenger or crew member of the affected aircraft has an implied cause of action for damages under the Act. For an essential element of such a cause of action, express or implied, is injury resulting from such a statutory violation which has been inflicted upon the plaintiff in his capacity as a member of the protected class and which has caused him measurable damage. Consequently, potential victims of aircraft accidents which, had they occurred, might have been caused by someone's failure to observe the Administrator's safety regulations, cannot be the intended beneficiaries of an implied federal cause of action for damages under the Federal Aviation Act, whatever may be the case with the actual victims of such an accident when it does occur.[10] Ac-

---

**6.** *See* 104 Cong.Rec. 13652 (1958) (remarks of Senator Payne).

**7.** 104 Cong.Rec. 17457 (1958) (remarks of Representative Flynt).

**8.** *See Gabel v. Hughes Air Corp.*, 350 F.Supp. 612, 616–617 (C.D.Cal.1972).

**9.** *Other important purposes of the Act are the encouragement and development of an economically sound and efficient air transportation industry and system responsive to the present and future needs of the civil and mili-*

*tary use of the navigable airspace of the United States, the securing of the national defense as it relates to aviation and the protection of the public right of freedom of transit through the national navigable air space. See §§ 102, 103, 104, 306 and 312(a) of the Act, 49 U.S.C.A. §§ 1302, 1303, 1304, 1347 and 1353(a).*

**10.** Whether actual victims of aircraft accidents which have occurred as a result of a violation of the safety regulations may recover damages by way of an implied federal right of action under the Act is not an issue in this case and need not be decided here. For cases dealing

cordingly the plaintiffs cannot claim an implied federal remedy for damages under the Act based upon their membership in a class of potential aircrash victims who have not actually been victims of a crash and have, therefore, in fact suffered no injury.

Actually the injury to the plaintiffs was of quite a different kind. It was incurred when they complied, as was their legal duty, with the Administrator's airworthiness directive which required them as owners of an aircraft containing an altimeter manufactured by and supplied to them by the defendants to correct the defective condition of the altimeter or to limit the operation of their plane to daytime flying. Thus, the damages to the plaintiffs, which amounted to $75.00, were suffered solely in their capacity as the owners of an aircraft who were responsible under the Act and regulations to see to its airworthiness and who controlled its use, and not in their capacity as members of a class of potential users of aircraft. The plaintiffs, of course, are members of both classes, but their membership in the latter class is, as we have seen, wholly irrelevant. The plaintiffs, therefore, for purposes of asserting an implied federal cause of action, must rely upon their membership in the class of aircraft owners, those persons who are responsible for keeping their aircraft and its equipment in the operable condition necessary to meet the safety standards of the Administrator and who must incur the concomitant expense required to do so.

■ We have seen that the primary and special concern of Congress in enacting § 601 of the Act and that of the Administrator in issuing the regulations authorized by § 601 was the safety of passengers and crew aboard aircraft in flight operations.

It necessarily follows that the special and primary concern of Congress and the Administrator under the Act and the regulations cannot have been the protection of owners of aircraft from economic loss suffered in complying with the safety provisions of the Act and the regulations. We are, therefore, satisfied that the plaintiffs are not members of the class for whose *especial* benefit the safety provisions of the Federal Aviation Act were enacted.

It is argued that since the purpose of Congress in passing the Federal Aviation Act of 1958 was to prevent accidents before they occur, persons who own or fly aircraft and can show economic harm as a result of a violation of the Act have an implied federal right of action for damages under the Act. The thrust of the argument is that a plaintiff who must show injury resulting from a violation of the Act in order to have a cause of action under it should not be required to show that his injury resulted from an air accident, given the congressional purpose to further accident prevention rather than to provide recompense for post-accident injury. This argument, however, ignores the limitation laid down in *Cort v. Ash* on the class of plaintiffs in whose favor a federal cause of action may be implied. And it does not explain why the safety or accident prevention objectives of Congress require that a federal right of action for damages be implied in favor of persons who suffer mere economic injury by reason of a violation of the Act. Prevention of injury before it occurs, the principal purpose of the Act, was accomplished, in this instance, when the unsafe altimeters were ordered to be corrected and were corrected. The plaintiffs' injury, the cost of their compliance with the Administrator's order, result-

with this issue *see* and *compare In re Paris Air Crash of March 3, 1974*, 399 F.Supp. 732 (C.D. Cal.1975); *Gabel v. Hughes Air Corp.*, 350 F.Supp. 612 (C.D.Cal.1972); *Neiswonger v. Goodyear Tire & Rubber Co.*, 35 F.2d 761, 762 (N.D.Ohio 1929) *with Rosdail v. Western Aviation, Inc.*, 297 F.Supp. 681, 683–684 (D.Colo. 1969); *Yelinek v. Worley*, 284 F.Supp. 679, 681 (E.D.Va.1968); *Moungey v. Brandt*, 250 F.Supp. 445, 453 (W.D.Wis.1966); *Porter v. Southeastern Aviation, Inc.*, 191 F.Supp. 42 (M.D.Tenn.1961); *Moody v. McDaniel*, 190 F.Supp. 24, 26 (N.D.Miss.1960); *Mozingo v. Consolidated Construction Co.*, 171 F.Supp. 396, 398 (E.D.Va.1959). *See also* Note, *The Applicability of Federal Common Law to Aviation Tort Litigation*, 63 Geo.L.J. 1083 (1975) and *The Case for a Federal Common Law of Aircraft Disaster Litigation: A Judicial Solution to a National Problem*, 51 N.Y.U.L.R. 231 (1976).

ed solely from the performance of their duty, under the Act, as owners of an aircraft to comply with the air safety requirements of the Act and regulations with respect to that aircraft. Whether they may have a cause of action against the defendants under state law is a wholly different question to which we shall refer later.

 The plaintiffs contend that there is a "pervasive legislative scheme" governing their relationship as owners of aircraft with manufacturers of aircraft and aircraft appliances under the Act comparable to the scheme apparent in § 14(a) of the Securities & Exchange Act of 1934 governing corporate management's relations with stockholders in connection with proxy solicitation. They conclude that they are, therefore, entitled to a private remedy under the Federal Aviation Act under the authority of *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). It may well be that the regulations which the defendants are alleged to have violated do place certain duties upon manufacturers of aircraft appliances which arguably are akin to the duties imposed under § 14(a) of the Securities & Exchange Act upon corporate management. It is clear in any event, however, that the principal beneficiaries of the proper performance of these duties are not the aircraft owners, but rather the air travelers and airplane crews whose safety was the chief concern of Congress.

Moreover, the regulations impose duties upon the owners and operators of aircraft as well as upon manufacturers. *See* 14 C.F.R. Parts 39, 47 and 49. In fact, the airworthiness directive,[11] which the plaintiffs submit as evidence of their injury and the damages they seek to recover, obligated the owners and operators of aircraft equipped with certain specified unsafe al-

timeters to correct the unsafe condition or to limit the use of their aircraft. We think that if there is a pervasive legislative scheme evident in the Act and the regulations promulgated thereunder governing relations between two groups, the groups are not the manufacturers of aircraft appliances on the one hand and aircraft owners on the other. On the contrary, they are the manufacturers and owners of aircraft who owe the duty to provide safe aircraft under the Act and regulations to persons traveling in aircraft, on the one hand, and the occupants of aircraft in flight whose safety was the principal concern of Congress, on the other. That concern was certainly not for the economic expense which an aircraft owner was required to incur to provide for the traveling public planes which complied with the safety requirements of the Act.

 We consider next the fourth factor referred to in *Cort v. Ash.* This is whether the matter is one ordinarily of state concern and the cause of action one traditionally governed by state law, so that it would be inappropriate to infer a federal cause of action. We think that the answer must be in the affirmative with respect to the plaintiffs' claim. Basically their claim is to recover $75.00, the cost to them of repairing their altimeter which had been manufactured by one of the defendants and distributed by the other. The repairs were allegedly necessary because the altimeter was defective and useless for the purpose for which it was made since it did not comply with the Administrator's air safety regulations. This is the type of situation with which the common and statutory law of the states deals every day. Whether their claim is based on liability for breach of a warranty of merchantability and fitness [12]

---

11. The Administrator's power to issue airworthiness directives derives from §§ 601 and 603 of the Act, 49 U.S.C.A. §§ 1421 and 1423. The aviation regulations provide that when an unsafe condition exists in an aircraft, aircraft engine, propeller or appliance which is likely to exist or develop in other aircraft products of the same design, the Administrator must issue an airworthiness directive. 14 C.F.R. § 39.1. The regulations further provide that "No per-

son may operate a product to which an airworthiness directive applies except in accordance with the requirements of that airworthiness directive." 14 C.F.R. § 39.3.

12. *See, e. g., General Instrument Corp., etc. v. Pennsylvania Pressed Metals, Inc.,* 366 F.Supp. 139, 146–147 (M.D.Pa.1973), *aff'd,* 506 F.2d 1051 (3d Cir. 1974); Pennsylvania Uniform Commercial Code—Sales §§ 2–313, 2–314, 2–

or on negligence[13] or strict liability in tort,[14] all of which they allege, the state law has been traditionally available to an injured party to obtain a remedy. In such a controversy as this the fact that it was the Administrator's regulations which, in the interest of air safety, prohibited the use of the altimeter unless properly repaired is peripheral and not a basic element of the claim. Accordingly this fact does not transform what is an ordinary claim to recover the cost of repairs made necessary by the defendants' derelictions, whether contractual or tortious, into some species of suit to enforce air safety regulations. It is clear to us that application of the fourth *Cort v. Ash* factor furnishes no support for the plaintiffs' position.

In view of our conclusions as to the application of the first and fourth factors, we find it unnecessary to consider the second and third factors laid down in *Cort v. Ash.*

The district court was of the opinion that implying the right of private individuals in the position of the plaintiffs to bring a damage suit would serve to enforce more effectively the safety provisions of the Act and the regulations issued under the authority of the Act and, in this way, would serve to deter future violations. A similar deterrence argument was advanced by this court in *Ash v. Cort,* 496 F.2d 416, 423 (3d Cir. 1974), the court noting that "stockholders, able to protect their investments by recovering damages on behalf of the corporation, may be expected to be particularly vigilant in detecting violation of § 610." However, the Supreme Court in that case was not influenced by the deterrence argument and, in addition, observed that the remedy sought by the plaintiffs there, as is true here, would not serve to effectuate the *primary* congressional goal. *Cort v. Ash,* 422 U.S. 68, 84, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). We are compelled to conclude, with respect to the deterrence argument for implying a federal remedy, that more affirma-

tive evidence of congressional intent is needed to support the contention than is here present.

The order of the district court will be reversed and the cause remanded with directions to dismiss the complaint.

---

315, 2–714, 2–715 and 2–721, 12A P.S. §§ 2–313, 2–314, 2–315, 2–714, 2–715 and 2–721.

**13.** *See, e. g., Gatenby v. Altoona Aviation Corp.,* 407 F.2d 443, 446 (3d Cir. 1968).

**14.** *See, e. g., Dennis v. Ford Motor Co.,* 471 F.2d 733 (3d Cir. 1973).