Frank SPINNER, Vertie Elizabeth Spinner, Christopher F. Spinner and Michael Spinner, Plaintiffs,

v.

Gary VERBRIDGE, G & G Farms, Inc., Williamson Flying Club and Williamson–Sodus Airport, Defendants.

No. CIV.A. 99–CV–5220 (DGT).

United States District Court, E.D. New York.

Dec. 29, 2000.

Gangemi & Gangemi, John F. Gangemi, Brooklyn, NY, for Plaintiffs.

Biedermann, Hoenig, Massamillo & Ruff, Deirdre A. Dunphy, New York City, for Defendant Williamson Flying Club.

James E. Reid, Greene & Reid, Syracuse, NY, for Defendants Gary Verbridge & G & G Farms, Inc.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Plaintiffs Frank Spinner, Vertie Elizabeth Spinner, Christopher F. Spinner and Michael Spinner (hereinafter "the Spinners") bring this suit against Gary Verbridge, G & G Farms, Inc., the Williamson Flying Club and Williamson–Sodus Airport

(hereinafter "the defendants") for personal injuries allegedly sustained as a result of negligent operation of an aircraft piloted by Gary Verbridge. Jurisdiction is premised entirely on two provisions of the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 44711(a)(1) and (a)(2)(A). Defendants now move to dismiss the complaint on the grounds that no private right of action exists under the FAA. In addition, the defendants contend that the negligent infliction of emotional distress claim brought by Christopher and Michael Spinner should be dismissed because these two plaintiffs were not in the zone of danger as required by the relevant statute.

### Background

### (1)

As required in deciding a motion to dismiss, the following facts, as alleged by the Spinners, are taken as true.

Gary Verbridge owned a 1966 Cessna 172G plane, Registration Mark N1308F, a dual control aircraft. *See* Complaint ¶ 14. In May, 1998, Frank Spinner and Verbridge negotiated an agreement whereby Spinner would purchase the plane from Verbridge on August 15, 1998. *See id.* ¶ 15. Because the runway, located on a private piece of property owned by defendant G & G Farms, Inc., was extremely narrow where it ran between apple trees, Spinner expressed his concern to Verbridge about flying the plane off of the runway, and the two agreed on August 15, 1998 that Verbridge would fly the plane from the private strip to Williamson–Sodus Airport, a five-minute flight. *See id.* ¶¶ 16–17. After Verbridge landed the plane at that Airport, the agreement to sell the plane would go forward, upon the completion of which, Spinner and his sons, Michael and Christopher, would then fly the plane on to Linden Airport in New Jersey. *See id.*

On August 15, just before takeoff, Verbridge told Spinner to sit in the left seat of the plane. *See id.* ¶ 18. Spinner agreed because he knew that the plane was dual-control, and Verbridge would be in command of the plane at all times. *See id.* When Verbridge took off at approximately 3:00 p.m., the right wing of the plane collided with the leaves and branches of the apple trees on the right side of the runway. *See id.* ¶ 20. The plane crashed into the trees and spun into the ground. *See id.* Spinner, who had had no control of the plane at any point, was severely injured. *See id.* ¶¶ 20–21. Spinner's two sons were standing outside Verbridge's house, to which the runway was adjacent, and witnessed the incident. *See* Mem. Law Opp. Def. Mot. Dis. at 14 [hereinafter "Pl.'s Opp. Mem."] The plane was approximately 200 feet away from them when it crashed. *See id.*

Gary Verbridge, at this time, had not renewed his flying certificate since 1992 but had been flying small planes without a proper certificate. Moreover, he had acted in such a way as to mislead Spinner into believing that he did indeed possess a valid certificate. *See* Complaint ¶¶ 23–25.

### (2)

Frank Spinner is now suing Verbridge for the latter's negligence in his ownership, operation, maintenance, management, supervision and control of the plane. *See id.* ¶ 29. He is suing G & G Farms for its negligence in failing to keep and maintain the runway in a condition of reasonable safety. *See id.* ¶ 36. He is suing the Williamson Flying Club, of which Verbridge was and continues to be a member, for failing to fulfill its duty to prevent and prohibit Verbridge from flying in and out of Williamson–Sodus Airport without a valid certificate. *See id.* ¶ 46. Finally, he is suing Williamson–Sodus Airport for negligence because it either knew or should have known that Verbridge's airman certificate had been suspended in 1992 and was never renewed and, consequently, should have prevented him from flying planes in and out of the airport. *See id.* ¶ 51. Spinner's sons, Michael Spinner and Christopher F. Spinner, are suing the all defendants for negligent infliction of emotional

distress. *See id.* ¶ 59. Spinner's wife, Vertie Elizabeth Spinner, is suing all defendants for loss of services / consortium. *See id.* ¶ 63.

## Discussion

■ The defendants contend that this Court has no jurisdiction to entertain the Spinners' claims because the sections of the FAA relied upon by the Spinners to confer jurisdiction provide for neither an express nor an implied private right of action. Jurisdiction in this case is premised wholly on 49 U.S.C. § 44711(a)(1) and (a)(2)(A) of the FAA:

§ 44711. Prohibitions and exemption

(a) Prohibitions.—A person may not—

(1) operate a civil aircraft in air commerce without an airworthiness certificate in effect or in violation of a term of the certificate;

(2) serve in any capacity as an airman with respect to a civil aircraft, aircraft engine, propeller, or appliance used, or intended for use, in air commerce—

(A) without an airman certificate authorizing the airman to serve in the capacity for which the certificate was issued. . . .

49 U.S.C.A. §§ 44711(a)(1) and (a)(2)(A).

To begin with, it is indisputable and undisputed that no express private right of action is created by these sections. But no court has squarely addressed the issue of whether an implied private right of action was created by these sections, although courts within this circuit have found no private right of action within a number of other sections of the FAA, *see e.g. Drake v. Delta Airlines, Inc.,* 923 F.Supp. 387 (E.D.N.Y.1996), *aff'd,* 147 F.3d 169 (2d.Cir.1998) (finding no private right of action under the FAA's drug-testing regulations); *McElderry v. Cathay Pacific Airways, Ltd.,* 678 F.Supp. 1071 (S.D.N.Y. 1988) (finding no private right of action under FAA provisions prohibiting airlines from charging fares higher or lower than those established by the tariff); and *Guth-*

*rie v. Genesee County,* 494 F.Supp. 950 (W.D.N.Y.1980) (finding no private right of action under the FAA's provisions prohibiting exclusive use of any federally funded landing area), and a few courts from other circuits have found no private right of action under various sections of the FAA in airplane crash scenarios. *See In re Mexico City Aircrash of Oct. 31, 1979,* 708 F.2d 400 (9th Cir.1983) (finding no private right of action for representatives of decedents in commercial airline crash in "the safety-oriented provisions of the Act, its accompanying regulations, and the general intent of the Act to promote the safety of air travelers," *id.* at 405); *Brown v. Byard,* 600 F.Supp. 396 (S.D.Ohio 1984) (finding no private right of action in survivorship or wrongful death cases brought on behalf of persons killed in a commercial airline crash under the FAA and, specifically, 49 U.S.C. § 1506, which provides that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies" ). None of these cases, however, are directly dispositive here, and so the issue of whether §§ 44711(a)(1) and (a)(2)(A) confer a private right of action will have to be addressed as a novel one.

■ An implied private right of action may be read into a statute by a court if the four-part test established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), is satisfied. The four-part test asks: (1) whether the statute was enacted to protect a particular class of beneficiaries; (2) whether the legislature intended, either explicitly or implicitly, to create such a remedy; (3) whether it is consistent with the legislative scheme to infer such a remedy; and (4) whether the cause of action is traditionally one relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law. *See id.* at 78, 95 S.Ct. at 2088. The Supreme Court has also made clear that the animus and ulti-

mate issue underlying the application of the four-part test is "whether Congress intended to create a private right of action." *See California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). In fact, the Court has explicitly stated that "each of [the four] factors is [not] entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979).

▮ The "threshold question," according to the Court, is the first part of the test, viz. whether or not the statute was enacted for the benefit of a special class of which the plaintiff is a member. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). "That question is answered by looking to the language of the statute itself." *Id.* The Court has recognized that phrasing a statute in general terms rather than specifically identifying the benefitted class indicates a lack of intent to create a private right of action. *See Sierra Club,* 451 U.S. at 293, 101 S.Ct. at 1779; *Cannon,* 441 U.S. at 690–93, 99 S.Ct. at 1954–55.

In this case, the language of the relevant provisions fails to manifest any intent to benefit a special class of persons. The Spinners contend that the special class for whose benefit the provisions have been enacted is "the public at large and passengers of an aircraft," Pl.'s Opp. Mem. at 8, that is to say, anyone on an airplane flown by an uncertified pilot and anyone on the ground in the vicinity where such an airplane might crash, two sets of people which, taken together, potentially comprise the entire population of the United States. *See also Nat'l Org. for Reform of Marijuana Laws v. Mullen,* 608 F.Supp. 945, 960 (D.C.Cal.1985) ("It is beyond dispute that Congress' 'whole purpose' in creating the FAA was to promote safe air travel, and to protect the lives and property of people on

the ground as well as of air travelers." (citation omitted)); *In re Air Crash Disaster near Silver Plume, Colorado, on October 2, 1970,* 445 F.Supp. 384, 400 (D.C.Kan. 1977) ("The intent of Congress in enacting the Federal Aviation Act of 1958 was to improve air safety and to prevent or reduce tragic aviation accidents."); *Starr v. U.S.,* 393 F.Supp. 1359, 1364 (D.C.Tex. 1975) ("The purpose of the Federal Aviation Act of 1958 is to promote aviation safety. This purpose extends to the safety of persons on the ground, as well as that of pilots and others aboard an aircraft.") In other words, the central purpose of these sections, according to this formulation, is to provide for the safety of the general public. Thus, the public is the class for whose benefit the statute has been enacted.

But the Supreme Court has refused to infer a private cause of action where a statute accrues not to the benefit of a particular class of individuals, but to the benefit of the public in general. In considering whether a statute that barred obstructions in navigable waterways created a private right of action, the Court presented, only to dismiss as unsound, the argument that anyone who would be specially harmed by such an obstruction was the intended beneficiary of the statute. *See Sierra Club,* 451 U.S. at 294, 101 S.Ct. at 1779. In *Sierra Club,* an environmental organization, a commercial fisherman and a landowner sued to enjoin construction and operation of water diversion facilities, claiming that present and proposed diversions of water from the Sacramento–San Joaquin Delta degraded the quality of Delta water. The Ninth Circuit found that the act in question [1] was designed for the "especial benefit" of private parties who may suffer 'special injury' caused by an unauthorized obstruction to a navigable waterway. *Id.* at 293–94, 101 S.Ct. 1775. But the Supreme Court saw fit to adopt a far more restrictive notion of "especial

---

1. § 10 of the Rivers and Harbors Appropria-   tion Act of 1899, 33 U.S.C. § 403.

benefit" and reasoned that the Ninth Circuit's definition "makes this factor meaningless." *Id.* at 294, 101 S.Ct. 1775. "The legislative history supports the view that the Act was designed to benefit the public at large by empowering the Federal Government to exercise its authority over interstate commerce with respect to obstructions on navigable rivers caused by bridges and similar structures," the Court wrote. *Id.* at 294–95, 101 S.Ct. 1775. And although at least one of the parties was a commercial fisherman whose concern with the unauthorized obstruction was certainly commercial in nature,[2] the very fact that the statute was meant to benefit the public at large and not a specific class was enough for the Court to refuse to infer a private right of action. Under a contrary view, the Court suggested, "a victim of any crime would be deemed an especial beneficiary of the criminal statute's proscription." *Id.*

While the certification provisions of the FAA are arguably more targeted at victims such as Frank Spinner than was the Rivers and Harbors Act at the plaintiffs in that case, analytically speaking, the criminal statute paradigm is closely analogous to the scenario presented in the case at bar. The set of all possible crime victims, i.e. the public at large, is the same as the set of all possible accident victims. A particular criminal statute addresses the specific subset of that class which was or will be victimized by a particular kind of criminal act in much the same way that these FAA provisions concern themselves with a specific subset of accident victims, viz. victims of airplane accidents. And in neither case, the argument would go, is a private lawsuit appropriate.

It is true that the Third Circuit—which admittedly addressed the issue prior to the Supreme Court's decision in *Sierra Club*—suggested the opposite conclusion in a case

where owners of aircraft equipped with defective altimeters brought suit against the distributor and manufacturer of the altimeter, charging, inter alia, violations of various FAA safety provisions. *See Rauch v. United Instruments, Inc.,* 548 F.2d 452 (1976). While acknowledging that the purpose of the FAA is "dominated by a safety objective" and meant "to assure the personal safety of all persons who are potential passengers or crew members of civil and military aircraft as well as those others on the ground whose lives or property might be endangered by accidents resulting from unsafe flying conditions," *id.* at 457, the court went on to conclude that this formulation of the class for whose special benefit the statute was enacted did not necessarily preclude a private right of action. Instead, to limit the range of those who can sue under the FAA's provisions, the court ruled that potential victims of an aircraft accident are not the "intended beneficiaries of an implied federal cause of action for damages," *id.* at 457, and the plaintiffs in that case could not "claim an implied federal remedy for damages under the Act based upon their membership in a class of potential aircrash victims who have not actually been victims of a crash and have, therefore, in fact suffered no injury." *Id.* at 457–58. While the *Rauch* court explicitly reserved the issue of whether actual victims of an accident do have a viable private damages remedy that they can pursue under the FAA, the Ninth Circuit in *Mexico City Aircrash,* 708 F.2d at 406, and the Southern District of Ohio in *Byard* 600 F.Supp. at 398, both air crash cases, found that passengers were the special class for whose benefit relevant FAA provisions were enacted, although both courts went on to deny private rights of action on the basis of the other factors of the *Cort v. Ash* test, particularly the ab-

---

**2.** If it is argued that an individual fisherman is not the intended beneficiary of the Act because the Act is concerned with interstate commerce and so could not possibly be meant to benefit a local fisherman who may or may not have been engaged in actual interstate commerce, *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) provides a ready rejoinder.

sence of Congressional intent to create any such cause of action.

None of these cases are dispositive in this Circuit, and it appears, on balance that it is unclear which way the first factor of the *Cort v. Ash* test leans. However, the Supreme Court has pointed out that, for purposes of the analysis of the first factor, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club,* 451 U.S. at 294, 101 S.Ct. at 1779. Admittedly, this reformulation of the test conflates, to some extent, the first and second factors of the test, but there is no need to insist that the four parts of this test (or the parts of many other tests, for that matter) be completely non-overlapping. Sometimes, the ultimate end must prevail over analytical clarity, which is, although an end in itself, more fundamentally a means to achieve a more specific purpose—in this case, a discerning of legislative intent.

Thus, as in *Sierra Club,* the Spinners here have not pointed to anything either in the language or legislative history of these sections of the statute to suggest that they were intended to inure to the benefit of a particular class. Their claim that a certificate of airworthiness is a very specific and definite requirement, and that it, therefore, is somehow distinguishable from a general safety provision is untenable, since the statute barring obstructions in navigable waterways at issue in *Sierra Club* was also quite definite and specific, which did not save it from nevertheless failing to identify or imply a specific set of beneficiaries beyond the public at large.

More significantly, turning to the second and third parts of the test, the weight of the evidence in this case suggests that

Congress had no intention to create a private right of action when it enacted the relevant provisions, a conclusion that is also suggested by the legislative scheme of the FAA as a whole. Aside from the Spinners' failure to indicate anything in the legislative history of these sections that would suggest Congressional intent to create a private cause of action, elsewhere in the statutory scheme of the FAA, Congress demonstrated the ability to create a private right of action when it desired to do so. In a virtually identical context, Congress provided for a "civil action in a district court" by "[a]n interested person" "against a person to enforce section 41101(a)(1) of this title." 49 U.S.C.A. § 46108. § 41101(a)(1), in turn, establishes that "an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation." 49 U.S.C.A. § 41101(a). This explicit private right of action has been used by airlines to enjoin competing airlines from engaging in activities in violation of their certificates of authority. *See, e.g., American Airlines v. Standard Air Lines,* 80 F.Supp. 135 (S.D.N.Y.1948); *World Airways, Inc. v. Northeast Airlines, Inc.,* 349 F.2d 1007 (1st Cir.1965).[3] The fact that Congress did not create a statutory provision analogous to § 46108 for private enforcement of § 44711(a)(1) and (a)(2)(A) is highly indicative of legislative intent.[4]

Moreover, Congress did not forget to include civil enforcement provisions in the FAA statute. § 46106 allows the Secretary of Transportation to bring a civil action in a district court "to enforce this part of a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part." 49 U.S.C.A. § 46106. § 46107(b) allows the Attorney General, upon request of the Sec-

---

**3.** These cases involved 49 U.S.C. § 1487(a), the predecessor to 49 U.S.C. § 46108.

**4.** The reason that § 46108 and § 41101(a)(1) are not applicable here is that "air transportation," to which § 41101(a)(1) and, therefore,

§ 46108 are addressed, is, as defined in the FAA, a term of art referring specifically to "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft," 49 U.S.C.A. § 40102(a)(5).

retary of Transportation, to bring a civil action in an appropriate court "(A) to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part;" and "(B) to prosecute a person violating this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part." 49 U.S.C.A. § 46107(b)(1). Civil penalties and criminal penalties are also carefully prescribed by the statute. *See* 49 U.S.C.A. §§ 46301–46316.

This elaborate and express enforcement schema makes it difficult for the Spinners to insist upon an implied private right of action that Congress intended but mysteriously omitted from the statute. As a court in the Eastern District of Michigan wrote, in a context where the plaintiffs were unable to bring a claim under § 1374 of the FAA for defendant's failure to provide safe and adequate service to prevent injury,

> [a]n action in federal court can be taken under the Federal Aviation Act only by the federal agencies governing aviation or the Attorney General. 49 U.S.C.A.App. § 1487 (1992). While Plaintiffs might file an administrative complaint regarding Defendant's violation of the Act, the only remedies provided by the FAA are for civil and criminal penalties and injunctive relief. 49 U.S.C.A.App. §§ 1471–1474, 1487 (West 1976 and Supp.1992). No money damages or other restitution are [sic] available to a private party.

*Margolis v. United Airlines, Inc.,* 811 F.Supp. 318, 324 (E.D.Mich.1993). A private right of action, in short, was neither intended by Congress, either explicitly or implicitly, nor is inferring such a remedy generally consistent with the legislative scheme of the FAA.

The Spinners' most sustained argument against such a disposition is a powerful public policy argument suggesting that although Congress may have provided a detailed administrative scheme designed to address violations that occur on large, commercial airlines, a private right of action is necessary for enforcement against uncertified individuals such as Gary Verbridge, individuals who fly small planes for pleasure. The Spinners suggest that in the absence of a private right of action, "hundreds of individuals across the country [could be] injured by a pilot flying a private plane without an airworthy certificate" without any practical recourse under the FAA. Pl.'s Opp. Mem. at 11. In support of this proposition, the Spinners cite no statistics about whether or not "hundreds" of individuals are actually injured by such pilots, but they do cite the Fifth Circuit's decision in *Diefenthal v. Civil Aeronautics Bd.,* 681 F.2d 1039 (5th Cir. 1982) (finding no private right of action to enforce requirement of "adequate service" under the FAA after airline passengers were denied seats in the smoking section and sued the Civil Aeronautics Board ("CAB") and the airline), where the court, in passing, writes that "[t]he only instances in which a private right of action might supplement rather than duplicate the CAB's efforts would be those cases where the violation was too infrequent or too sporadic for the CAB to act." *See id.* at 1050. However, the court was discussing injunctive relief, which it also noted "is unnecessary" in such cases, since they are, by definition, too sporadic to be meaningfully affected by an injunction. *See id.* The same is true of injunctive relief in the case at bar. Therefore, it would appear that a private right of action in cases such as this one would only be meaningful if it allowed suits for damages, but suits for damages are already available under state law. As the discussion of the fourth *Cort v. Ash* factor will indicate, ordinary negligence suits are available for plaintiffs in these circumstances, and the reality of the situation is that legitimate grievances against individual pilots flying small aircraft will not go unremedied.

It would advance this discussion, then, to ask under what circumstances, if any such there be, inferring a private cause of

action would accomplish anything that the combination of the FAA and private negligence suits would not. One possibility is that such a right would allow a plaintiff in a case like this one to bring suit against an organization such as the Williamson Flying Club. This would have several desirable consequences.

First, there is a distinct possibility that it would decrease the probability of accidents. It is true that a pilot does not need any special legal liability rules to deter him from crashing planes. However, there is a range of conduct that, while positively correlated with accident risk, does not present itself as being so correlated to the mind of an individual pilot when he flies his private plane. Into this category falls the possession of an airworthiness certificate.

There is reason to assume, after all, that pilots possessing such a certificate are, on average, more reliable, knowledgeable, responsible and, ultimately, safer than their uncertified counterparts. And yet, the pilot who takes to the sky without a certificate likely does not believe that he is engaging in dangerous conduct or that he would be a safer pilot were he to be certified. Furthermore, if our hypothetical uncertified daredevil also happens to be an attorney cognizant of the liability rules at trial, if he crashes and is subsequently sued, assuming his survival, by an injured passenger for negligence, he will know that in New York, although a lack of certification could potentially be admissible as a recent criminal violation to impeach his credibility, it would most likely prove inadmissible as evidence of negligence, at least if the unlicensed driver paradigm is taken as dispositive. *See Phass v. MacClenathen*, 274 A.D. 535, 85 N.Y.S.2d 643 (3rd Dep't 1948) (finding that testimony that a defendant driver was unlicensed in a negligence suit was admissible to impeach his credibility but inadmissible as negligence per se because possession of a license would not have prevented the accident, unlike, say, the use of headlights in the classic negligence per se case, *Martin v.*

*Herzog*, 228 N.Y. 164, 126 N.E. 814 (1920)); *Almonte v. Marsha Operating Corp.*, 265 A.D.2d 357, 696 N.Y.S.2d 484 (2d Dep't 1999) ("The fact that Cruz was unlicensed failed to demonstrate that he was negligent, as the absence or possession of a driver's license relates only to the authority for operating a vehicle, and not to its manner of operation"). Thus, there appears to be little if any incentive for a small-time pilot, even one who is unnaturally fearful of a negligence action, to get himself certified.

This is where holding an organization such as the Williamson Flying Club liable under the FAA could be of use. Under standard negligence law, a plaintiff might have difficulty demonstrating a duty by the Flying Club to make sure that its member pilots are certified and any airports it controls—Williamson-Sodus Airport, in this case—are used only by certified pilots. But if the Spinners were allowed to sue the Williamson Flying Club under the FAA, then such organizations would be on notice and would force their members to get themselves certified.

Second, holding the Williamson Flying Club liable under the FAA could address the problem of uninsured or underinsured small-time pilots by both giving the would-be-plaintiff an additional defendant to sue in the event of a pilot's insolvency and by creating an incentive on the part of pilot-member organizations to ensure that their membership abides by FAA provisions requiring insurance coverage. Provisions like these might otherwise go unenforced because of the insignificance of these sporadic flights from the standpoint of the kind of large-scale national and international air traffic that the FAA primarily exists to regulate.

While all of these consequences might well be desirable, the argument for inferring a private cause of action against the Williamson Flying Club under these circumstances cannot be sustained. The sections of the FAA relied on by the Spinners

in this case provide, as noted above, that "a person may not ... operate a civil aircraft ..." or "serve in any capacity as an airman with respect to a civil aircraft." 49 U.S.C.A. §§ 44711(a)(1) and (a)(2)(A). If there were any private damages remedy that could be inferred from these sections, it would surely be directed against the "person" that the sections address, viz. the pilot, and not against a pilot-member organization that is neither mentioned nor implicitly referred to by the language of these provisions. Thus, although inferring a cause of action against the Williamson Flying Club may be desirable, there is no language in the statute which authorizes the courts to fill in this unanticipated lacuna in the statutory scheme.

As for inferring a cause of action against the individual pilot, not only is there also no legislative intent in support of this measure, but also there is no need for inferring this cause of action. This claim would be one traditionally relegated to state law under the fourth prong of the *Cort v. Ash* test. The Spinners insist that "[t]he duty to prohibit flight without a proper certificate of airworthiness is not within the jurisdiction of the State Court." Pl.'s Opp. Mem. at 12. But although it may be true that state law does not specifically prohibit flight without a proper certificate, the broader category of negligence, within which this case falls, is certainly a traditional province of state law. And, in fact, the Spinners are pursuing a state-law counterclaim in *Verbridge v. Spinner, et al.*, Index No. 46089/99 in the Supreme Court, Wayne County.

Despite the Spinners' powerful public policy argument, it is clear that, overall, the factors of the four-part test balance in favor of a conclusion that no private right of action exists under §§ 44711(a)(1) and (a)(2)(A) of the FAA. The defendants' motion to dismiss is granted accordingly.[5]

### Conclusion

Because there is neither an express nor an implied private right of action under 49 U.S.C.A. under §§ 44711(a)(1) and (a)(2)(A), and as the Spinners can point to no other basis for conferring jurisdiction upon this court, there is no subject matter jurisdiction in this case. For this reason, the defendants' motion to dismiss is granted.

So Ordered.

---

5. Because a grant of summary judgment on the jurisdictional issue disposes of the case, there is no need to go on to consider the defendants' further argument that Mr. Spinner's sons were not in the "zone of danger" and are consequently unable to sue for negligent infliction of emotional distress.

In addition, defendants have moved for a change of venue, and this motion will not be ruled on either. The reasons are twofold. First, the motion was largely premised on the inclusion in the suit of the Town of Williamson and the Town of Sodus as defendants. After the defendants made their motion but before they made their reply to the Spinners' answer, the Spinners voluntarily dismissed the two towns from the case and wrote in their answer that

[t]he motion to seek a change of venue was brought solely by the Defendants the Town of Williamson and the Town of Sodus. The Plaintiffs, by letter dated October 4, 2000, have notified all the Defendants of their

decision to withdraw their actions as against both towns. Accordingly, the issue of change of venue is moot and the Eastern District is presumed to be the proper venue. Pl.'s Opp. Mem. at 15. In truth, it is unclear from the defendants' brief whether or not the motion for change of venue was made only on behalf of the two towns, since the claim that neither the events or occurrences giving rise to the cause of action nor the residence of the defendants is in the Eastern District of New York survives the dismissal of the towns from the action. Nevertheless, the defendants' reply makes no mention of the motion for change of venue, and this may be an indication that they have no interest in pursuing this motion at this time. But second, and more importantly, since the defendants' motion to dismiss has been granted, thereby disposing of the case, even if venue were improper here, a change of venue would only cause needless administrative delay prior to arriving at the same result.